**Mark STENNETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1013–95.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 16, 1996.

Stanley Schneider, W. Troy McKinney, Tom Moran, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

After Mark Stennett was arrested for possession of marihuana, he received from the Texas Comptroller of Public Accounts a bill for taxes in the amount of $49,070.00. Evidently, it was the Comptroller's position that Stennett owed these taxes on account of his having purchased, acquired, imported, manufactured, or produced marihuana. *See* Tex. Tax Code § 159.101(a).[1] The tax bill informed Stennett that his taxes were past due, that a late penalty had been assessed, and that further penalty and interest might be assessed if the taxes were not paid promptly. He was also notified of his right to a hearing in the event that he disagreed with the bill.

Stennett did not, however, request a hearing. Instead, he mailed the Comptroller a check in the amount of $100.00, drawn on his personal account, and marked it simply "Tax." [2] He then filed an application for habeas corpus in the 248th District Court of Harris County, alleging that his payment of the tax barred further criminal prosecution for possession of marihuana under the Double Jeopardy Clause of the United States Constitution.[3] *See* U.S. Const. amend. 5. An evidentiary hearing was held on this application, at which Stennett and the District Attorney each introduced a few paper exhibits. Both sides then rested without offering any further evidence or argument, and the trial judge denied relief without comment.

On appeal Stennett claimed that assessment of the tax constituted punishment for his illegal possession of the marihuana and that such punishment effectively barred the imposition of any further punishment for the same offense. The Fourteenth Court of Appeals rejected this argument, however, and we refused discretionary review. *Stennett v. State*, 905 S.W.2d 612 (Tex.App.—Houston [14th] 1993). Stennett then took his case to the United States Supreme Court, which summarily granted his petition for certiorari, vacated the judgment of the Fourteenth Court of Appeals, and remanded to that Court for reconsideration in light of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). *Stennett v. Texas*, 513 U.S. 922, 115 S.Ct. 307, 130 L.Ed.2d 271 (1994).

On remand the Fourteenth Court of Appeals, relying on *Kurth Ranch*, reversed its earlier position, holding that further prosecution of Stennett under the Texas Controlled Substances Act for possession of marihuana was jeopardy barred by the Fifth Amendment because Stennett had already been punished for that offense by the imposition and partial collection of a tax on the marihuana he allegedly possessed. *Stennett v. State*, 905 S.W.2d 612 (Tex.App.—Houston [14th Dist.] 1995). We granted discretionary review because the Court of Appeals decision involves an important question of federal law, affecting the constitutionality of a Texas statute, which has not yet been settled by this Court. *See* Tex.R.App. Proc. 200(c)(2),(4).

In *Kurth Ranch* the United State Supreme Court found that a Montana tax on the possession of marihuana, similar in many respects to the tax assessed against Stennett in

---

1. Section 159.101(a) also imposes a tax on the "possession" of marihuana. However, the notice of tax due sent by the Comptroller to Stennett conspicuously omitted to claim taxes on account of Stennett's possessing marihuana, and demanded only that he pay "tax on the purchase, acquisition, importation, manufacture or production of marihuana[.]" *See* Defendant's Exhibit 4.

2. The record does not reflect whether the Comptroller ever cashed this check, although it is likely that he did because the check was offered into evidence by Stennett. *See* Defendant's Ex-

hibit 5. We cannot confirm this hypothesis, however, as the appellate record contains a photocopy only of the front of the check.

3. Because the exaction of $100 in marihuana tax from Stennett was not obtained as a result of any judicial or quasi-judicial proceeding, Stennett's double jeopardy claim necessarily presents a multiple punishment, not a successive prosecution, question. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

the instant cause, was a punishment for purposes of the constitutional prohibition against successive punishments for the same criminal offense. It happened this way. The defendants in *Kurth Ranch* were first prosecuted and convicted for criminal possession of or conspiracy to possess illegal drugs. The state of Montana then sought to collect from them a large sum of money as tax on the marihuana they had been convicted of possessing. The defendants contested this assessment in an administrative proceeding which was later stayed when they filed a petition in bankruptcy. The bankruptcy court declared the tax assessment to be jeopardy barred, and a federal district court affirmed its judgment, as did the Ninth Circuit Court of Appeals. On certiorari the United States Supreme Court agreed, holding that the Montana tax was

> a second punishment within the contemplation of a constitutional protection that has deep roots in our history and jurisprudence, and therefore must be imposed during the first prosecution or not at all. The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy for the same offense.

*Kurth Ranch*, 511 U.S. at 784, 114 S.Ct. at 1948, 128 L.Ed.2d at 782 (citations and internal quotation marks omitted).

That the Montana tax was a punishment became manifest to the Supreme Court when it considered several factors suggesting that the tax was not intended merely as a revenue-producing measure. In the first place, it was much higher than would be expected for a purely revenue tax and was plainly intended by the Montana legislature, at least in part, as a deterrent to the possession of marihuana. Furthermore, the duty to pay the tax was expressly conditioned upon commission of a criminal offense by the tax obligor and assessed against him only after his arrest and dispossession of the taxable property. *Kurth Ranch*, 511 U.S. at 780–83, 114 S.Ct. at 1946–48, 128 L.Ed.2d at 779–80.

Of course, the fact that a tax is imposed on illegal activity or that it is intended in part to discourage such activity does not alone make it a punishment for purposes of the Double Jeopardy Clause. *Id.* at 780–83, 114 S.Ct. at 1945–47, 128 L.Ed.2d at 778–79. But, when the only persons subject to the tax are those against whom criminal charges have already been brought and who no longer possess or otherwise exercise any control over the taxable contraband, a claim that imposition of the tax is not penal becomes constitutionally implausible, particularly if, as in Montana, the tax is remarkably high. *Id.* at 782–83, 114 S.Ct. at 1947–48, 128 L.Ed.2d at 780–81.

■ Many of these same considerations also apply to the Texas controlled substances tax and militate in favor of a conclusion that it, like the Montana tax, is a penalty for criminal conduct. As in Montana, the marihuana tax in Texas is high, nearly $100 an ounce, and is imposed only against those persons who possess or deal in marihuana or other controlled substances illegally. Tex. Tax Code § 159.101(b)(3). But, unlike Montana, Texas does not impose its tax only on those who have been arrested and charged with a criminal offense. Instead, the obligation to pay the tax arises when the taxable event occurs, whether or not that event has yet come to the attention of law enforcement agencies, let alone become the subject of a criminal prosecution. Tex. Tax Code § 159.101(c). Moreover, the Texas legislature has provided a means for those who owe taxes on controlled substances to pay their bills in confidence and thus satisfy their tax obligation without subjecting themselves to arrest or otherwise bringing upon themselves a criminal prosecution. Tex. Tax Code § 159.005. For these reasons, we might be inclined to find that the Texas system of controlled substances taxation, unlike the Montana scheme, is not a punishment, were it not for the fact that the Texas tax was plainly and undoubtedly intended to be a punishment by the legislature that enacted it.

■ As in the case of civil forfeitures and penalties which seem on their surface to be remedial and, therefore, not subject to con-

stitutional restrictions affecting criminal prosecutions, the threshold question in deciding whether a tax amounts to punishment for purposes of the Double Jeopardy Clause is whether it was actually intended to serve a revenue-producing purpose or was designed instead to punish persons for the commission of crimes. *See United States v. Halper,* 490 U.S. 435, 442–444, 109 S.Ct. 1892, 1898–1900, 104 L.Ed.2d 487 (1989); *Helvering v. Mitchell,* 303 U.S. 391, 398–405, 58 S.Ct. 630, 632–36, 82 L.Ed. 917 (1938). The legislative history of the tax statute here in question makes it clear that the Texas legislature actually meant this tax to serve only the latter purpose. A few examples, excerpted from relevant legislative records, adequately illustrate the point.

> The threat of a tax levy large enough to wipe out any illegal profits should add to the deterrent value of a prison sentence and criminal fine for drug dealing. The tax would be due even if the dealer escaped criminal conviction on some technicality. . . . This is a law-and-order bill, not a revenue bill.

House Research Organization bill analysis, H.B. 24, May 9, 1989.

> What this bill does is establish the ... requirement of licensure and the payment of taxes with respect to illicit controlled substances and dangerous drugs and would offer another tool, if you would, to law enforcement in addition to the actual current criminal offenses.

Sen. McFarland, Senate Criminal Justice Committee Public Hearing, May 18, 1989.

> It was not conceived of initially as a revenue bill. It has not worked out to be a revenue bill. It's basically a prosecutorial tool. The prosecutors get to use the state tax basically as yet another hammer when working with people that are arrested for various drug offenses. And ultimately the theory is it would be packaged up in a plea bargain. And that it would make it easier to work with individual defendants.

Testimony of Mark Weiss, Comptroller's Office, before the Senate Finance Committee, May 20, 1989.

These comments are typical of those expressed publicly or officially by all sponsors and proponents of the tax bill, and are satisfactory evidence that the legislature intended the tax on marihuana and other controlled substances to serve as further punishment for criminal conduct already punishable by heavy fines and protracted incarceration under the Texas Penal Code. Tex. Gov't Code § 311.023(1–3). We therefore conclude, as did the Fourteenth Court of Appeals in this case, albeit for different reasons, that the Texas tax on controlled substances and marihuana is a punishment subject to the prohibition of the United States Constitution against imposing it in a separate proceeding from that in which other criminal punishments for the same offense are imposed. Accordingly, we affirm the judgment of the Fourteenth Court of Appeals.

WHITE, J., dissents.

McCORMICK, Presiding Judge, dissenting on State's Petition for Discretionary Review.

I dissent. Appellant was formally charged by indictment with the criminal offense of possessing more than five, but less than fifty, pounds of marihuana. Thereafter, according to the majority opinion, the Texas Comptroller of Public Accounts sent appellant a tax bill in the amount of $49,070.00 on account of appellant "having purchased, acquired, imported, manufactured, or produced marihuana." Appellant sent his personal check for $100.00 to the Texas Comptroller of Public Accounts. It is not clear that the Comptroller's office ever negotiated this check.

Appellant now claims the State cannot punish him for the criminal offense because he already has been "punished" for that offense by the "payment" of the $100.00 to the Texas Comptroller of Public Accounts. Based on *Kurth Ranch,* the majority holds the "Texas tax on controlled substances and marihuana is a punishment" under the Fifth Amendment's double jeopardy clause, and affirms the judgment of the Court of Appeals. See *Department of Revenue of Mon-*

tana v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

However, in this case, it is completely unnecessary to address the broad constitutional question the majority addresses because there is no evidence Texas taxing authorities are actually trying to collect the entire tax of $49,070.00, and the "payment" of $100.00 out of a $49,070.00 tax assessment cannot be considered "punishment" for double jeopardy purposes. Even the *Kurth Ranch* Court would not have gone this far. See *Kurth Ranch*, 511 U.S. at 773, 114 S.Ct. at 1942–43, 128 L.Ed.2d at 774–75 (Montana taxing authorities attempted to collect almost $900,000.00 in taxes in administrative proceedings). The *Kurth Ranch* court really seemed to be concerned with what it believed was the excessive tax Montana actually tried to collect from the Kurth family. See *Kurth Ranch*, 511 U.S. at 780 fn. 17, 114 S.Ct. at 1946 fn. 17, 128 L.Ed.2d at 779 fn. 17 (Montana taxed the marihuana at 400% of its market value). I would hold appellant's voluntary, *de minimis* partial "payment" of an assessed tax is not "punishment" under the Fifth Amendment's double jeopardy clause.

Moreover, it is not even clear whether *Kurth Ranch* is a "successive punishments" for the same offense or a "successive prosecution" for the same offense case since the majority opinion in that case seems to hold Montana's tax was "punishment" but later goes on to conclude the "proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution." Compare *Kurth Ranch*, 511 U.S. at 784, 114 S.Ct. at 1948–49, 128 L.Ed.2d at 781–82, *with, Kurth Ranch*, 511 U.S. at 805–07, 114 S.Ct. at 1959–60, 128 L.Ed.2d at 795 (Scalia, J., dissenting). Since the law in this area is not very clear

especially where, as here, a criminal penalty is at stake, I also would uphold the constitutionality of the Texas statutory scheme at issue in this case and leave it to the Supreme Court to decide whether it violates double jeopardy principles. See *Kurth Ranch*, 511 U.S. at 804, 114 S.Ct. at 1958–59, 128 L.Ed.2d at 794 (Scalia, J., dissenting) (pointing out that at least one circuit court of appeals has suggested that double jeopardy principles allow a criminal punishment when a civil sanction has already been imposed, and also pointing out that the social costs of the "fictional" multiple-punishments double jeopardy prohibition will be much higher when criminal penalties are at stake).

I respectfully dissent.

KELLER, J., joins this dissent.

MANSFIELD, Judge, dissenting on Appellant's Petition for Discretionary Review.

Appellant was indicted for the felony offense of possession of greater than five, but less than fifty, pounds of marihuana. Tex. Health and Safety Code § 481.121(b)–4. Subsequently, the Texas Comptroller of Public Accounts sent appellant a statement for taxes due, in the amount of $49,070.00, under applicable provisions of Chapter 159 of the Texas Tax Code, The Texas Controlled Substances Tax Act.[1] The statement informed appellant the taxes were overdue, a late penalty had been assessed, and failure to pay the taxes then due might result in additional taxes and penalties being imposed. Appellant was also informed he was entitled to a hearing should he wish to contest the validity of the assessment against him.

Appellant did not request a hearing. He did, however, mail the Comptroller a check

---

1. Texas Tax Code § 159.101 provides:

(a) a tax is imposed on the possession, purchase acquisition, importation, manufacture, or production by a dealer of a taxable substance on which a tax has not previously been paid under this chapter.

(b) the rate of the tax is:

(2) $3.50 for each gram of a taxable substance consisting of or containing marihuana.
* * *
(g) If a determination made under this chapter becomes final without payment of the amount of the determination being made, the comptroller shall add to the amount a penalty of 10% of the amount of the tax and interest.

for $100, on which he wrote the word "tax." It appears the Comptroller cashed the check, though the record does not conclusively demonstrate whether it was so cashed.

Appellant then filed an application for writ of habeas corpus in the 248th District Court, claiming the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred the subsequent prosecution for marihuana possession due to his having paid tax on that marihuana under Texas Tax Code § 159.101. The trial court denied relief.

The Fourteenth Court of Appeals rejected appellant's argument that assessment of the tax constituted punishment for possession of marihuana, thereby barring the prosecution of appellant subsequently for possession of the same marihuana that is the subject of the tax assessment.. *Stennett v. State*, 905 S.W.2d 612 (Tex.App.—Houston [14th Dist.] 1993) (pet. refused). The United States Supreme Court summarily granted appellant's petition for certiorari, vacated the judgment of the court of appeals, and remanded the cause to the court of appeals for further proceedings in light of *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). *Stennett v. Texas*, 513 U.S. 922, 115 S.Ct. 307, 130 L.Ed.2d 271 (1994).

On remand, the Fourteenth Court of Appeals reversed its prior judgment. Relying on *Kurth Ranch*, the court of appeals held that the prosecution of appellant for possession of marihuana was jeopardy-barred by the Fifth Amendment because appellant had already been punished by the imposition and partial collection of the tax on that same marihuana. *Stennett v. State*, 905 S.W.2d 612 (Tex.App.—Houston [14th Dist.] 1995). We granted the State's petition for discretionary review to consider the following ground for review:

Whether the court of appeals erred in determining the Texas Controlled Substances [Tax] Act constitutes punishment for double jeopardy purposes in light of *Department of Revenue of Montana v. Kurth Ranch* be-

cause the Texas tax does not contain the two "unusual features" that were found controlling in *Kurth Ranch*.

The court of appeals considered five factors in determining that the Texas Controlled Substances Tax was punitive:

1. the tax is conditioned on commission of a crime;

2. the statute allows a tax assessment after the substance that is taxed is confiscated;

3. the rate of tax exceeds the value of the taxed substance making it similar in that respect to the Montana Tax (and a key factor in the Supreme Court's finding the Montana tax was punishment);

4. The assessment of the tax on noncontrolled substances that are misrepresented as controlled substances; and

5. The coordination between the Comptroller's office and the prosecutor under Section 159.206 which, among other things, permits the Comptroller to compromise or settle taxes, interests and penalties otherwise due only with the written consent of the prosecutor.

*Stennett*, 905 S.W.2d at 613–614.

The State, in its brief, noted two differences between the Texas Controlled Substances Tax and the Montana tax. First, the Montana tax is imposed only on individuals arrested for possession or sale of controlled substances while the Texas tax is imposed on all individuals who illegally possess controlled substances. Second, the Montana tax is imposed only after the controlled substance is seized; the Texas tax is due and payable when the controlled substance comes into the individual's possession.

The double jeopardy clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amendment V. The clause serves the function of preventing both "successive punishments and . . . successive prosecutions." *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2855,

125 L.Ed.2d 556 (1993), citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The protection against multiple punishments prohibits the State from "punishing twice, or attempting a second time to punish criminally for the same offense." *Witte v. United States*, —— U.S. ——, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, citing *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) the Supreme Court addressed whether a civil sanction may be, in some instances, considered "punishment," thereby implicating the Fifth Amendment's Double Jeopardy Clause and barring a subsequent criminal prosecution of the person for the same offense or offenses for which he has been civilly sanctioned. In *Halper*, Halper was convicted of filing 65 Medicare false claims, and was sentenced to two years' imprisonment and a fine of $5000. The evidence showed the total loss resulting from the false claims to the government was $585. The cost of prosecuting Halper was approximately $16,000.

The government subsequently brought a civil action under the False Claims Act, 31 U.S.C. 3729–3731, under which Halper was subject to a penalty of $2000 for each false claim, for a total of $130,000. The district court concluded, in light of Halper's previous criminal punishment, an additional civil penalty this large would violate the Double Jeopardy Clause's prohibition on multiple criminal punishments for the same offense.

The Supreme Court unanimously held that the "government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the government whole." *Halper*, at 451, 109 S.Ct. At 1903.

The Court acknowledged that a civil sanction following a criminal conviction that compensates the government for its costs of prosecution and actual damages is remedial in nature and is not punishment.

"We therefore hold that under the Double Jeopardy Clause a defendant who has already been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be characterized as remedial, but only as a deterrent or retribution.... Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the government may receive without crossing the line between remedy and punishment."

*Halper*, at 448–49, 109 S.Ct. At 1902.

Consistent with *Halper*, it is clear that where the State subsequently files a civil sanction action against an individual against whom it has already obtained a criminal conviction, it must demonstrate to the trial court that the amount of the sanction it seeks is "remedial," i.e., the amount is rationally related to the costs of prosecution and damages it sustained as a result of the individual's criminal conduct. Any sanction in excess of such an amount is punishment and is barred by the Double Jeopardy Clause.

In *Kurth Ranch, supra*, the Supreme Court held that a state tax imposed on marihuana was invalid under the Double Jeopardy Clause where the individual had already been convicted of possession of marihuana on which the tax was imposed. The Court initially found that merely calling a civil sanction a "tax" did not make it so, for purposes of double jeopardy analysis. The Court then considered whether the tax was so punitive as to rise to the level of a civil sanction qualifying as a "punishment" subject to the Double Jeopardy Clause.

Initially, the high rate of the tax—several times the value of the marihuana, imposed under the statute—was recognized by the Court as evidence of its punitive nature, though the Court emphasized that the rate of tax, standing alone, does not necessarily render it punitive. *Kurth Ranch,* at 781, 114 S.Ct. at 1947. Of more significance was that the tax is conditioned on commission of a crime—illegal possession of a controlled substance. Indeed, the Montana tax is imposed only after the taxpayer is arrested for the precise conduct that gives rise to the tax liability in the first place—illegal possession of marihuana. "Taxes imposed upon illegal activities are fundamentally different from taxes with a pure revenue-raising purpose that are imposed despite their adverse activity on the taxed activity." *Kurth Ranch,* at 782, 114 S.Ct. At 1947.

The Court further noted the tax is imposed on goods no longer possessed by the taxpayer: the tax is levied following confiscation of the controlled substances by the government.

"This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment. Taken as a whole, this drug tax is a concoction of anomalies, too-far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Kurth Ranch,* at 783, 114 S.Ct. at 1948.

The Texas Controlled Substances Tax is nearly identical to the Montana tax at issue to the extent that the rate of tax—$98 per ounce of marihuana versus $100 per ounce of marihuana under the Montana statutes—significantly exceeds the value of the substance taxed. The State, in its brief, does not provide evidence of any other tax imposed by

the State of Texas whose rate is even remotely similar to the Controlled Substances Tax. The intent behind the Texas Controlled Substances Tax is to punish drug dealers, not to produce revenue, as clearly demonstrated by its legislative history. Majority Opinion at 916. Legislative intent is significant in determining whether a tax or other sanction amounts to punishment for purposes of the Double Jeopardy Clause. *Halper,* 490 U.S. at 442–444, 109 S.Ct. at 1898–1900, *Kurth Ranch,* at 780, n. 18, 114 S.Ct. at 1946, n. 18. It is evident the Texas Controlled Substances Tax Act is intended to punish drug dealers and any revenue-producing aspect is merely incidental.[2]

The State, in its brief, notes that the Texas Controlled Substances Tax is imposed on anyone defined as a "dealer" under section 159.001(3), whereas the Montana controlled substances tax is imposed only on individuals arrested for illegal possession/sale of controlled substances and from whom controlled substances have been seized. These differences are not significant, especially when Section 159.001(3) defines "dealer" as "a person who in violation of the law of this State imports into this State or manufactures, produces, acquires, or possesses in this State...." Thus, like its Montana counterpart, the Texas Controlled Substances Tax applies only to individuals who illegally are in possession of controlled substances, i.e., it applies only to criminals.[3]

I agree with the majority that, given the strong similarities between the Montana tax and the Texas tax, the court of appeals' finding that the Texas tax is a punishment for double jeopardy purposes is correct. However, the record below does not indicate whether the State, other than sending a no-

2. We note again that, under Texas Tax Code § 159.206, written consent of the prosecutor is required before the Comptroller's office my compromise or settle any controlled substances tax due under the Texas Controlled Substances Tax Act, further evidence the Act is primarily intended to punish drug dealers, *not* raise revenue.

3. The Illinois Supreme Court recently held that a tax imposed under the Cannabis and Controlled Substances Act on appellee following his crimi-

nal prosecution for possession of the same controlled substances that were the subject of the tax violated the Double Jeopardy Clause. *Wilson v. Department of Revenue,* 169 Ill.2d 306, 214 Ill. Dec. 849, 662 N.E.2d 415 (1996). The provisions of the Illinois Cannabis and Controlled Substances Act are similar to those of its Texas counterpart.

tice of tax due to appellant, has made any effort to collect the tax allegedly owed by appellant.

Accordingly, I would vacate the judgment of the court of appeals and would remand the cause to that court to resolve the following two issues:

(1) Is the mere sending of a notice of tax due under the Texas Controlled Substances Tax Act "punishment" so as to implicate double jeopardy and thus bar appellant's prosecution for possession of marihuana?

(2) Was appellant, by sending a check marked "tax" to the Office of the Comptroller for $100, equal to much less than 1% of the tax due, "punished," and his pending prosecution for possession of marihuana thus barred by the Double Jeopardy Clause?

I respectfully dissent.