Regina A. BROUSSARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–96–00119–CR.

Court of Appeals of Texas,
Tyler.

Aug. 27, 1997.

Rehearing Overruled Oct. 22, 1997.

Discretionary Review Refused April 1, 1998.

---

**8.** *See* 21 Am.Jur.2d *Criminal Law* § 138 (1981).

Robert Audley Heath, Houston, for appellant.

Danny Buck Davidson, Carthage, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Regina A. Broussard ("Appellant") appeals her conviction for possession of a controlled substance, cocaine, for which the trial court assessed her punishment at six (6) years imprisonment, probated, with a $3,000 fine. Appellant asserts that the trial court erred when it failed to dismiss her indictment on double jeopardy grounds, when it overruled her motion to suppress, and when it overruled her motion to dismiss for violation of her right to a speedy trial. We will affirm.

Appellant, a resident of Harris County, was driving through Panola County on her way to Shreveport, Louisiana. Two female companions were accompanying her on the trip. Appellant was exiting from the loop in Carthage onto U.S. Highway 79 North, when a state trooper pulled her over. Trooper Barry Washington ("Washington") motioned for another vehicle to pull over at the same time. He exited his vehicle and walked to the second car. He asked for a driver's license, and when the driver lowered his window, Washington smelled marijuana. Washington then noticed that Appellant was driving away from the scene, so he directed the driver of the second car to follow him while he pursued Appellant. She stopped approximately a quarter of a mile down the highway. Washington asked for Appellant's driver's license and insurance, questioned the three women as to their acquaintance with the three men in the second car, then asked Appellant if she would consent to a search of her vehicle. Appellant agreed, and opened her trunk. At this point, testimony diverged.

Washington claimed that he asked Appellant if he could search the luggage in her trunk, and that she consented. Appellant testified that Washington never asked if he could search the contents of the luggage, but that he did so anyway. Washington opened a grey bag and found a "brick" of cocaine wrapped in duct tape. He proceeded to arrest Appellant and the other two women.

In her first point of error, Appellant asserts that the State Comptroller punished her for possession of the cocaine by assessing a $235,721.95 tax and filing a tax lien against her pursuant to the marijuana and controlled substances tax. Appellant argues that the State could not punish her again for the same offense and that the subsequent criminal prosecution was barred by double jeopardy. Appellant cites *Stennett v. State*, 941 S.W.2d 914 (Tex.Cr.App.1996) for the proposition that the state tax on controlled substances is a punishment for double jeopardy purposes. We agree that *Stennett* so held, but do not agree that the Court of Criminal Appeals' opinion controls in the instant case. In *Stennett*, the Comptroller assessed a tax against the defendant, and the defendant then mailed $100 to the Comptroller in partial payment therefor. The lower court, in *Stennett v. State*, 905 S.W.2d 612 (Tex.App.—Houston [14th Dist] 1995), held that the defendant had already been punished for the offense of possession of marijuana by the imposition and partial collection of a tax on the marijuana he allegedly possessed. The Court of Criminal Appeals affirmed that decision, holding that the state tax on controlled substances and marijuana is a punishment subject to double jeopardy clause's prohibition against imposing punishment in separate proceeding from that in which other criminal punishments for same offense are imposed. The Court did not discuss, however, the issue of when jeopardy attached, when the State assessed the tax, or when Stennett made a partial payment on that tax. That question is now before us.

■ "You can't have double jeopardy without former jeopardy." *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.1994). "[T]o prevail on a double jeopardy claim, former jeopardy must be shown to have attached." *United States v. Baird*, 63 F.3d 1213, 1218 (3rd Cir.1995). The doctrine of attachment of jeopardy is set out in *Serfass v. United States*, as follows:

> Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." (cite omitted). Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

420 U.S. 377, 391–92, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975). In the instant case, Appellant has paid no portion of the tax, nor has she contested the tax assessment or lien at a hearing. Appellant has not been subjected to any proceeding with respect to her tax liability. The issue has not been put before any trier of fact. Neither is there evidence that a tax judgment has been rendered against her.

■ Appellant complains that as the result of the tax levy, she has been unable to buy a car, rent an apartment, or retain a job with Continental Airlines. Simply because Appellant has suffered some harm due to the tax assessment and lien is not dispositive of the jeopardy question, however. An assessment and tax lien are analogous to indictment and pretrial detention. In a criminal prosecution, the defendant is not placed in jeopardy until a proceeding begins before a trier having jurisdiction to try the guilt or innocence of the accused. That is the case even when, due to indictment and pretrial detention, a defendant has lost his job, his vehicle, etc. Similarly, jeopardy does not attach in a controlled substances tax case until the government's claim has been reduced to final judgment, or at the very least, until the defendant pays all or a portion of the assessed tax. We hold that jeopardy has never attached in this matter. We overrule point of error one.

In point of error two, Appellant complains that the trial court erred when it overruled her motion to suppress evidence of the "brick" of cocaine found in her vehicle. She argues that Officer Washington had no prob-

able cause for the search, and that the search was not consensual.

At the hearing on the motion to suppress, Washington testified that he had been in law enforcement for fourteen (14) years, and that he had made over 350 drug busts. On the night in question, he saw Appellant's vehicle and another car change lanes without signaling and then exit onto U.S. Highway 79. It appeared to Washington that the two cars were traveling together. He stopped both cars and noticed that Appellant's vehicle had an expired inspection sticker. When he spoke to the driver of the second vehicle, he could smell marijuana. Washington recognized the driver as someone he had arrested the year before for smuggling cocaine. Appellant drove away from the scene without Washington's permission, which caused the police officer to surmise that Appellant was involved in criminal activity with the persons in the second car.

Washington further testified that he first asked Appellant if he could search the trunk, and Appellant opened the trunk for him. He then testified that when he saw the grey bag, he asked Appellant if he could search the luggage. Washington alleged that Appellant said that he could do so. Another police officer testified at the hearing that Appellant gave Washington her consent to search the luggage in the trunk of her car. There was some discrepancy, however, between this officer's and Washington's testimony. As a result of the search, Washington located what he believed to be a kilo of cocaine.

■ A law enforcement officer requires neither probable cause nor a warrant when the owner or a third party with common authority gives consent for a search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242 (1974). The Fifth Circuit Court of Appeals has suggested that the following factors should be considered in determining if a consent to search is voluntary:

1. The voluntariness of the defendant's custodial status.

2. The presence of coercive police procedures.

3. The extent and level of the defendant's cooperation with the police.

4. The defendant's awareness of his or her right to refuse consent.

5. The defendant's education and intelligence.

6. The defendant's belief that no incriminating evidence will be found.

*United States v. Galberth,* 846 F.2d 983, 987 (5th Cir.1988), *cert. denied,* 488 U.S. 865, 109 S.Ct. 167, 102 L.Ed.2d 137 (1988). There is no one factor that is controlling in determining whether consent has been given voluntarily. *Id.* Voluntariness of consent is to be determined from a consideration of all the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48; *Fancher v. State,* 659 S.W.2d 836, 839 (Tex.Cr.App.1983).

■ When the State seeks to rely upon consent to justify the lawfulness of a warrantless search, it has the burden of proving by clear and convincing evidence that the consent was given freely and voluntarily. *Fancher,* 659 S.W.2d at 839. The State must demonstrate that the consent was given positively and unequivocally and without actual or implied coercion. *Lopez v. State,* 663 S.W.2d 587, 590 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). This issue is a question of fact that should be decided by the trial court in ruling on the admissibility of the seized evidence. *Gilmore v. State,* 666 S.W.2d 136, 148 (Tex.App.—Amarillo 1983, pet. ref'd). At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Cr.App.1980). On appeal, the standard of review of a trial court's denial of a motion to suppress is abuse of discretion. *DuBose v. State,* 915 S.W.2d 493, 496 (Tex. Cr.App.1996). "Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the 'zone of reasonable disagreement,' the appellate court should not intercede." (cite omitted). *Id.* at 496–97.

■ Washington testified that Appellant gave verbal consent to search both the trunk

and the luggage in the trunk. Another officer testified that consent was freely given. Appellant testified that she consented to the search of the trunk but not of the luggage. There was evidence, however, that Appellant was fully cooperating with the police, by answering questions, giving Washington her driver's license and insurance, etc. There was also evidence of cooperation in that Appellant opened the trunk immediately when Washington asked permission to search it. There was no evidence that the police used coercive procedures to gain access to the trunk. There was no testimony as to Appellant's awareness of her right to refuse consent or her education. There *was* evidence that Appellant was of at least average intelligence, since she had previously worked for Continental Airlines as a reservations clerk. Even though there were two other people in the vehicle with Appellant when Washington stopped her, neither were at the hearing to testify as to the consent to search or the voluntariness thereof. After reviewing the totality of the circumstances, we hold that the trial court's finding that Appellant gave Washington voluntary consent to search her vehicle and luggage was within the zone of reasonable disagreement. The court did not abuse its discretion when it denied Appellant's motion to suppress. Point of error two is overruled.

In her point of error three, Appellant complains that she was denied a speedy trial under TEX. CONST. art. I, § 10 and U.S. CONST. amend. VI, as applied to the State under U.S. CONST. amend. XIV. She relates the following events: the grand jury indicted Appellant on September 11, 1992. Appellant was arraigned on September 30, 1992, at which time the State announced ready. On October 9, 1995, the case was called. State again announced ready for trial, but Appellant's attorney had not received notice of that setting, and was not present. Defense attorney arranged to appear on the January docket. The case was called on January 22, 1996, the State announced ready and Appellant was present. On that date, the trial court heard Appellant's Motion to Dismiss and Motion to Suppress. On January 30, 1996, the court signed orders overruling Appellant's motions and set trial for February 9, 1996.

Appellant's attorney requested a continuance because of a previously scheduled trial in Houston.

On February 26, 1996, Appellant filed a Motion to Dismiss for Violation of Defendant's Right to Speedy Trial. The trial court heard testimony that same day. Appellant's attorney testified that on or about February 9, he attempted to contact the two passengers of Appellant's vehicle. One of the women could not be located. He argued that because this witness was present at the time of the arrest, she could have testified as to the circumstances surrounding the traffic stop and search. Consequently, the unreasonable delay in going to trial caused the defense to lose corroboration for Appellant's version of events.

After hearing evidence on the Motion to Dismiss, the trial court denied the motion and Appellant proceeded to change her plea to guilty. The State and Appellant entered into a plea bargain agreement, which the trial court approved.

■ Although the Texas and Federal rights to speedy trial are separate and distinct, interpretation and application of the Sixth Amendment right to speedy trial by the federal courts serve as a useful guide to the interpretation of the Texas constitutional right to speedy trial. *See Harris v. State*, 827 S.W.2d 949, 956–57 (Tex.Cr.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Chapman v. Evans*, 744 S.W.2d 133 (Tex.Cr.App.1988). In analyzing a speedy trial violation, we must utilize a balancing test of the following four factors: 1) length of delay; 2) reason for delay; 3) defendant's assertion of the right to a speedy trial; and 4) prejudice to defendant resulting from that delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Deeb v. State*, 815 S.W.2d 692 (Tex. Cr.App.1991). No single factor is either a necessary or a sufficient condition to the finding of a deprivation of the right to a speedy trial. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193–94. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *Id.* The standard of review in speedy trial

claims is *de novo*. *Clarke v. State*, 928 S.W.2d 709, 713 (Tex.App.—Fort Worth 1996, no pet.).

## LENGTH OF DELAY

■ The length of delay is measured from the time the defendant is arrested or formally accused to the date of trial. *Ramirez v. State*, 897 S.W.2d 428, 432 (Tex.App.—El Paso 1995, no pet.). The length of delay is a triggering mechanism; there must be enough of a delay to be presumptively prejudicial before the other factors need be considered. *Id.* No specific length of time triggers a speedy trial analysis, but the Court of Criminal Appeals has noted that many courts have found that a delay of eight months or longer is prejudicial. *Harris*, 827 S.W.2d at 956; *see also State v. Empak, Inc.*, 889 S.W.2d 618, 623 (Tex.App.—Houston [14th Dist.]1994, pet ref'd).

■ In the instant case, from the indictment until Appellant pleaded guilty, there was a delay of almost three and a half years. As this length of delay is sufficient to raise the issue, an analysis of the remaining three *Barker* factors is appropriate.

## REASON FOR DELAY

Once a court determines that the length of the delay triggers a speedy trial analysis or the State concedes the issue, it is the State's burden to excuse this delay. *See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Cr.App.1983); *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Cr.App.1976). In the hearing on the speedy trial motion, Appellant's attorney presented himself as witness. He testified as related above. The State did not present any witnesses, nor did it attempt to excuse the delay. We do note, however, that there is no evidence that the State deliberately delayed trial, since it announced ready in September of 1992. Furthermore, the only motion for continuance in this case was filed by the defense. We conclude that this factor weighs neither for nor against the State.

## ASSERTION OF THE RIGHT

Upon cross-examination of Appellant's attorney, the State asked him if he had ever filed a Motion for Speedy Trial. He admitted that he had not filed his client's Motion to Dismiss for Violation of Right to Speedy Trial until that day, almost three and a half years after indictment. This would indicate that Appellant did not, in fact, want a speedy trial. In addition, Appellant wholly failed to assert her right to a speedy trial, filing only a Motion to Dismiss. Since Appellant failed to assert her right, we hold that the three and a half year delay before trial does not weigh against the State. *See State v. Kuri*, 846 S.W.2d 459, 464 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

## PREJUDICE RESULTING FROM THE DELAY

The final factor, prejudice, must be assessed in the light of the interests which the speedy trial right was designed to protect: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

> The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982).

Appellant offered no evidence as to the first and second interests. But concerning the third interest, Appellant alleges that her defense was prejudiced by the State's actions in delaying trial because she lost the ability to call one of her witnesses. There is no evidence in the record, however, that the witness would have been willing to testify for the defense at trial, that she heard what transpired between Washington and Appellant, or that she was subpoenaed to testify at

the 1992 trial setting. In addition, there is no evidence that during the three and a half year delay Appellant even attempted to get the witness' statement. Furthermore, there is a marked absence of evidence in the record that the second passenger, who apparently *was* available, could not testify to the very same subject matter.

The standard in Texas to show prejudice for speedy trial purposes is not actual prejudice but some showing of potential prejudice resulting from the delay. *Chapman*, 744 S.W.2d at 137. Even so, we find that there was not sufficient evidence produced to show prejudice to the defense for speedy trial purposes. Concluding that Appellant showed minimal, if any, prejudice by the delay, this factor weighs against Appellant.

Balancing the factors set forth in *Barker*, we agree with the trial court that Appellant was not deprived of her right to a speedy trial. Point of error three is overruled.

We affirm the trial court's judgment.