OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



August 10, 1999

The Honorable Carole Keeton Rylander
Comptroller of Public Accounts
L.B.J. State Office Building
111 E. 17th Street
Austin, Texas 78774

Opinion No. JC-0086

Re: Constitutionality of chapter 159 of the Tax Code and related questions (RQ-1133)

Dear Comptroller Rylander:

Your predecessor asked this office a series of questions concerning the application of the Controlled Substances Tax, chapter 159 of the Tax Code, which imposes taxes on controlled substances, in light of the United States Supreme Court decision *Department of Revenue v. Kurth Ranch*, 511 U.S. 767 (1994), as well as of the Texas Court of Criminal Appeals decisions *Stennett v. State*, 941 S.W.2d 914 (Tex. Crim. App. 1996) (en banc), and *Ex parte Ward*, 964 S.W.2d 617 (Tex. Crim. App.) (en banc), *cert. denied,* 119 S. Ct. 66 (1998). In particular, he was concerned with the extent to which the application of the tax might implicate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as well as with questions concerning refunds of payments made pursuant to chapter 159. While we cannot advise you with respect to particular refund matters, which depend on fact-finding in which this office cannot engage in the opinion process, we can review the general legal issues raised by your predecessor's request.

As a preliminary matter, our reading of the case law indicates the following: *Kurth Ranch* stands for the proposition that statutes which impose taxes on illicit narcotics may involve double punishment impermissible under the Double Jeopardy Clause unless such taxes are imposed in the same proceeding as the underlying possession or trafficking case; pursuant to *Stennett*, the tax imposed by chapter 159 of the Tax Code is a punitive tax the imposition of which in a separate proceeding implicates the Double Jeopardy clause; however, under *Ward,* if partial payment of the tax precedes criminal prosecution for the underlying charge, jeopardy does not attach until there has been "full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due," 964 S.W.2d at 632, and accordingly until then "there is no 'punishment' for purposes of the Double Jeopardy Clause's prohibition against multiple punishments." *Id.*[1]

Chapter 159 of the Tax Code, the Controlled Substances Tax, provides for a tax on "possession, purchase, acquisition, importation, manufacture, or production by a dealer" of a controlled substance. TEX. TAX CODE ANN. § 159.101(a) (Vernon 1992). If a dealer pays the tax

---

[1]We note that the United States Court of Appeals for the Fifth Circuit is considering the issue of when jeopardy attaches in a case styled *Truman v. Johnson*, No. 98-11199, which is now *sub judice.*

on a controlled substance, he must "affix in the manner required by the comptroller to the taxable substance the appropriate tax payment certificate"; possessing such substances without possessing adequate stamps for them "is prima facie evidence that and is notice that the tax has not been paid as required." *Id.* § 159.102(a), (b). It is a criminal offense to possess controlled substances on which tax is unpaid; the offense is a third degree felony, and in addition to the fine for such a felony— which pursuant to section 12.34(b) of the Penal Code is "not to exceed $10,000"—the penalty includes "an amount equal to the amount of tax due and unpaid" on the drugs. *Id.* § 159.201(a), (b); TEX. PEN. CODE ANN. § 12.34(b) (Vernon 1994). In order to avoid possible self-incrimination problems with the statute, section 159.005(a) provides that information provided the Comptroller in the course of paying the tax is confidential. However, section 159.004 provides that paying the tax on the drugs is no defense from prosecution "under the penal laws of this state relating to" them. TEX. TAX CODE ANN. §§ 159.004, .005(a) (Vernon 1992).

Chapter 159 is not a revenue-enhancing statute. As part of the testimony in the legislative history cited in *Stennett* makes clear, "[The tax] was not conceived of initially as a revenue bill. It has not worked out to be a revenue bill. It's basically a prosecutorial tool. The prosecutors get to use the state tax basically as yet another hammer when working with people that are arrested for various drug offenses." *Stennett*, 941 S.W.2d at 917 (citing testimony of Mark Weiss, Comptroller's Office).

Taxes such as that in chapter 159 are, "[a] recent development in the escalating 'war on drugs.'" Claudia G. Catalano, Annotation, *Validity, Construction, and Application of State Laws Imposing Tax or License Fee on Possession, Sale, or the Like, of Illegal Narcotics*, 12 A.L.R. 5th 89 (1993). Until 1994, such laws had withstood a variety of constitutional challenges, including claims that they violated the Double Jeopardy Clause.

In 1994, however, the United States Supreme Court held in *Kurth Ranch* that Montana's drug tax "is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment . . . and therefore must be imposed during the first prosecution or not at all." *Kurth*, 511 U.S. at 784. The bases on which the Court made this holding were, *inter alia*, the high rate of the tax, its deterrent purpose, the fact that it was conditioned on the commission of a crime and was imposed only on persons "arrested for the precise conduct that gives rise to the tax obligation," and the fact that the goods taxed were contraband that was presumably destroyed before the tax was assessed. *Id.* at 780-83.

Justice Scalia, in his *Kurth Ranch* dissent, identified the problem that the holding raises, and the problem with which the Court of Criminal Appeals has been wrestling: "In the present case . . . we confront the relatively easy task of disallowing a *civil* sanction because *criminal* punishment has already been imposed. But many cases . . . will demand much more of us: disallowing *criminal* punishment because a *civil* sanction has already been imposed. . . . [I]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference." *Id.* at 804 (emphasis added).

After *Kurth Ranch,* chapter 159 came under renewed scrutiny. In *Stennett,* the Court of Criminal Appeals held that chapter 159 "was plainly and undoubtedly intended to be a punishment by the legislature that enacted it." *Stennett,* 941 S.W.2d at 916. Accordingly, the court concluded "that the Texas tax on controlled substances and marihuana is a punishment subject to the prohibition of the United States Constitution against imposing it in a separate proceeding from that in which other criminal punishments for the same offense are imposed." *Id.* at 917.

In *Ex parte Ward,* the Court of Criminal Appeals cabined *Stennett. Ward* defines the point at which jeopardy attaches for Double Jeopardy Clause purposes under *Stennett* and overrules *Stennett* "to the extent that it may be interpreted as holding the 'assessment' of the tax on controlled substance[s] and/or 'partial payment' of the tax due constitute 'punishment' for purposes of *Kurth Ranch*'s prohibition against 'successive punishments.'" *Ward,* 964 S.W.2d at 632. The *Ward* court rejected several other points at which jeopardy might attach, including the point at which the tax was automatically imposed by statute; the receipt of a tax determination; and the imposition or enforcement of a tax lien. Partial payment such as Ward's payment of $250 on a $120,000 tax lien was also rejected. The court held that "absent full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due, there is no 'punishment' for purposes of the Double Jeopardy Clause's prohibition against multiple punishments." *Id.* The *Ward* court, however, did not overrule the finding of *Stennett* that the Texas drug tax was, like the Montana drug tax in *Kurth Ranch,* a punitive enactment.

We note as a point of interest that *Stennett* and *Ward* do not articulate what offense or offenses jeopardy has attached *for* when full payment of the tax has been made. Nothing in *Kurth Ranch* affects the validity of *Blockburger v. United States,* 284 U. S. 299 (1932), under which, as Judge Meyers pointed out in his concurrence in *Ex parte Chappell,* offenses are "different" and do not implicate the Double Jeopardy Clause when "each statutory offense requires proof of at least one fact which the other does not." *Ex parte Chappell,* 959 S.W.2d 627, 630 (Tex. Crim App. 1998).

Judge Meyer's *Chappell* concurrence is suggestive in this regard. Chappell argued that assessment of the drug tax barred his prosecution for aggravated delivery of cocaine. The Court of Criminal Appeals rejected this argument as it had in *Ward,* which was decided on the same day. While Judge Meyers did not agree with the court's rationale, he nonetheless concurred in the result based on his view that the tax offense and the delivery offense had separate elements: "Delivery requires proof that the cocaine was 'transfer[red], actually or constructively, to another.' The tax offense does not require proof of any transfer. The tax offense requires proof that no tax has been paid on the cocaine. Delivery does not require proof of tax not paid." *Id.*

Based on the logic of Judge Meyers' concurrence, and on *Blockburger* itself, we think jeopardy does not attach even on full payment of the tax for offenses such as, *e.g.,* delivery or conspiracy possessing an additional element not included in the tax statute.

Having outlined the state of the law in this area, we turn to the specific questions asked by your predecessor. The first question presented is, "Under *Stennett,* is a tax assessment barred because a criminal conviction and/or trial occurred first?" Letter from Honorable John Sharp,

Comptroller of Public Accounts, to Honorable Dan Morales, Attorney General 1 (Apr. 28, 1998) (on file with the Opinion Committee ) [hereinafter Sharp Letter 4/28/98]. We answer this question in the affirmative. Both *Kurth Ranch* and *Stennett* stand for the proposition that a tax such as that in chapter 159 cannot be imposed after the criminal prosecution. As *Kurth Ranch* puts it, such a tax is "a second punishment . . . [that] must be imposed during the first prosecution *or not at all.*" *Kurth*, 511 U.S. at 784 (emphasis added).

Your predecessor's second question is, in light of *Ward*, "[M]ay the Comptroller collect money from a person who has been assessed for taxes under Chapter 159, Tax Code, without that collection becoming a 'punishment' for double jeopardy purposes, as long as the total collections do not equal the full amount of the tax, penalty, and interest due?" Sharp Letter 4/28/98, *supra*, at 1. We assume, on the basis of our answer to the first question, that this question presumes a situation in which the collection of taxes occurs before the criminal prosecution. In that case, given the *Ward* court's clear view that partial payment did not constitute punishment, and particularly the holding that "absent full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due, there is no 'punishment' for purposes of the Double Jeopardy Clause's prohibition against multiple punishments," 964 S.W.2d at 632, we think that the *Ward* case may fairly be read for the proposition that jeopardy will not attach until there has been full payment. Partial payments in this context do not implicate the Double Jeopardy Clause.

The third question presented is whether, if criminal prosecution be in a federal court, the doctrine of dual sovereignty "allow[s] us to proceed with administration of the drug tax without being barred by prior criminal proceedings as in *Stennett*, or without running the possibility of interfering with a subsequent criminal prosecution if a tax assessment is finalized along the lines outlined in *Ward*?" Sharp Letter 4/28/98, *supra*, at 2.

The only case directly concerning the applicability of dual sovereignty in this context with which we are acquainted is *Lynn v. West*, 134 F.3d 582 (4th Cir.), *cert. denied*, 119 S. Ct. 47 (1998), a case from the United States Court of Appeals for the Fourth Circuit, which, while holding that a North Carolina drug tax was a criminal penalty whose enforcement "must conform to the constitutional safeguards that accompany criminal proceedings," 134 F.3d at 593, nevertheless asserted that double jeopardy was not at issue in the instant case:

> In this case the Double Jeopardy Clause does not apply because it does not bar successive prosecutions by different sovereigns. Only the United States prosecuted Lynn for cocaine possession, so the Double Jeopardy Clause does not bar North Carolina's enforcement of the Drug Tax even though it is a criminal penalty. Because the United States brought the prior criminal prosecution, North Carolina remained free to impose its own criminal sanctions.

*Id.* (citations omitted).

In our view, however the Fifth Circuit might decide the ultimate issue in *Lynn*, the dicta quoted above answer the former Comptroller's third question in the affirmative. Our conclusion in this regard is bolstered by a footnote in *Kurth Ranch* itself, in which the Court noted with apparent approval "our cases holding that the Constitution does not prohibit successive prosecutions by different sovereigns based on the same conduct." 511 U.S. at 782 n.22. Since the United States and the State of Texas are distinct sovereigns, the application in separate proceedings of a federal criminal statute and a Texas tax statute, or indeed a Texas criminal statute, will not violate the Double Jeopardy Clause of the Fifth Amendment.

The former Comptroller's fourth question is whether the Comptroller's Office could "refuse a tender of payment to avoid a potential violation of the Double Jeopardy Clause?" Sharp Letter 4/28/98, *supra*, at 2. The Comptroller may not refuse such a tender. The Comptroller of Public Accounts has a ministerial duty to collect taxes pursuant to section 111.001 of the Tax Code, which provides: "The comptroller shall collect the taxes imposed by this title except as otherwise provided by this title." TEX. TAX CODE ANN. § 111.001 (Vernon 1992). While courts may in some instances construe the word "shall" as merely directory, particularly if the relevant provision does not "go to the essence of the act to be performed," *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976), most uses of "shall" are mandatory. *See* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon Supp. 1998) ("shall" imposes duty unless context "necessarily requires a different construction"). "Shall" in section 111.001, which prescribes not the form but the nature of the Comptroller's duty, is clearly mandatory.

Beyond the ministerial duty of the Comptroller to collect taxes, we note as well that failure to pay the tax is itself a criminal offense. *See* TEX. TAX CODE ANN. § 159.201 (Vernon 1992). We do not believe that a public official may, by a refusal of duty, require a citizen to persist in a criminal course of conduct. Accordingly, the Comptroller cannot refuse a tender of payment of the tax due and owing under chapter 159.

In his fifth question, your predecessor asked whether the withdrawal of a civil referral under the act and the return of funds tendered under it can "cure any potential violation of the Double Jeopardy Clause?" Sharp Letter 4/28/98, *supra*, at 2. We assume again, for the purposes of this question, that the underlying criminal proceeding has yet to occur. (If the criminal proceeding had occurred first, before any funds have been tendered, then pursuant to our answer to the first question, funds tendered subsequently must be returned.) Following *Ward*, the answer to this question depends on whether full payment, or only partial payment, has been made. If full payment has been made, jeopardy has attached. *Ward*, 964 S.W.2d at 632-33. However, until full payment has been made, it has not attached. Accordingly, whether or not a civil referral were withdrawn and funds tendered prior to the criminal prosecution were refunded, there would be no violation of the Double Jeopardy Clause. The partial payment of a tax due and owing does not, under *Ward*, constitute impermissible double punishment.

In the final question, we are first asked whether the Comptroller must refund taxes collected relating to a drug tax referral if the relevant prosecutor requests the dismissal of an assessment and the termination of any further action with respect to a particular taxpayer. Again, we assume that

this is a "reverse *Kurth Ranch*" or "tax first" situation, rather than the situation dealt with in the first question. And again, the first relevant inquiry is whether full or partial payment is in question. Assuming that only partial payment has been made and that consequently jeopardy has not attached, we do not believe that your office is obliged to refund any payments made. Moreover, there would not appear to be any reason, as a general matter, for the prosecutor to make the request at issue. Put simply, if full payment had been made, jeopardy would have attached and could not be "unattached" by a refund. On the other hand, if only partial payment has been made, then under *Ward* there has been no punishment and there is no bar to prosecution.

*Kurth Ranch*, *Stennett*, and *Ward* do not imply that taxes paid under chapter 159 are not due and owing. The cases, read together, imply only that the Double Jeopardy Clause of the Fifth Amendment is triggered when full payment of those taxes has been made. If the partial payments were then due, as a matter of fact—a question dependent upon the facts in each particular situation upon which we cannot opine—then the case law does not require their refund. If your office were to determine, in agreement with the relevant prosecutor, that the settlement or compromise of such a penalty were "in the best interest of the state," TEX. TAX CODE ANN. § 159.206(2) (Vernon Supp. 1999), then it would be empowered to settle it; but the case law, as we have noted, does not compel it to do so merely because partial payment has been made. Further, it is irrelevant whether, as the second part of the last question asks, either a prosecutor or this office is seeking forfeiture of such moneys. The Comptroller is under no obligation to return such funds to the taxpayer whether or not they are potentially subject to a forfeiture action. (We note, however, that pursuant to section 159.205, the Comptroller's rights with respect to the collection of such funds, as well as to the imposition of a lien on them, are subordinate to the forfeiture rights of a "federal, state, or local law enforcement authority." *Id.* § 159.205(a).)

The final part of the sixth question asks whether the Comptroller can "rely on the Statute of Limitations . . . and refuse to refund any taxes collected under [chapter 159] which are outside the limitations period even if the collection of such funds constituted a potential violation of the Double Jeopardy Clause of the United States Constitution at the time of collection?" Sharp Letter 4/28/98, *supra*, at 2. Again the question conflates several possibilities which must be dealt with seriatim.

First, the question is whether criminal prosecution or tax collection has occurred first. If criminal prosecution had occurred first, jeopardy would have attached and later collection of either partial or full payment would have violated the Double Jeopardy Clause. However, if the taxpayer made no claim for refund within the relevant limitations period, a later claim for the money is barred. It does not matter that the potential basis for a claim is a constitutional violation. Pursuant to section 111.104(c)(3) of the Tax Code, a refund claim must be "filed before the expiration of the applicable limitation period" or before six months after a jeopardy or deficiency determination becomes final, whichever is later. A claim not timely filed is barred. *See S. & H. Mktg. Group, Inc. v. Sharp*, 951 S.W.2d 265, 267 (Tex. App.–Austin 1997, no pet.).

If on the other hand the tax collection has occurred before the criminal prosecution, the statute of limitations on tax refund claims has run, yet the possibility of criminal prosecution remains—a set of events which we imagine would require special circumstances—the question once

again will turn on whether payment was partial or full.  If the payment was partial, then again, following *Ward*, jeopardy will not have attached.  If, however, the payment was full and jeopardy has attached, we do not think the constitutional protection against double jeopardy can be overcome merely because the taxpayer has no continuing right to a refund.

To summarize, then, the tax established by chapter 159 of the Tax Code is, pursuant to the decision of the Texas Court of Criminal Appeals in *Stennett*, a criminal punishment that cannot be imposed "in a separate proceeding from that in which other criminal punishments for the same offense are imposed." *Stennett*, 941 S.W.2d at 917.  The Court of Criminal Appeals has further held in *Ex parte Ward*, that for the purposes of the Double Jeopardy Clause of the Fifth Amendment, jeopardy attaches only upon "full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due." *Ward*, 964 S.W.2d at 632.  Pursuant to *Stennett* and its progeny, once jeopardy has attached in a criminal proceeding, the Comptroller may not thereafter attempt to collect chapter 159 taxes.  Since, under *Ward*, jeopardy will not attach on partial payment of the tax, there is no point short of full payment at which collection of taxes due and owing under chapter 159 constitutes punishment for double jeopardy purposes so as to preclude subsequent criminal prosecution.  Criminal prosecution by one sovereign, the United States, and tax collection by another, the State of Texas, does not implicate the Double Jeopardy Clause.  The Comptroller may not refuse tender of payment of taxes due and owing under chapter 159.  So long as there has not been full payment of the tax, which event triggers the attachment of jeopardy, the Double Jeopardy Clause is not implicated whether or not the Comptroller withdraws the civil referral and refunds the taxes collected.  Generally, partial payments need not be refunded unless criminal prosecution has occurred before such payments were made.  If the statute of limitations runs before the taxpayer files a claim for any impermissible payments, the taxpayer's claim is barred.  However, if jeopardy has attached by reason of full payment, and the statute thereafter runs, the fact that the taxpayer may not get back his money has no effect on the state's subsequent inability to prosecute the underlying criminal case.

## S U M M A R Y

The tax established by chapter 159 of the Tax Code is, pursuant to the decision of the Texas Court of Criminal Appeals in *Stennett v. State*, 941 S.W.2d 914 (Tex. Crim. App. 1996) (en banc), a criminal punishment that cannot be imposed "in a separate proceeding from that in which other criminal punishments for the same offense are imposed." *Id.* at 917. The Court of Criminal Appeals has further held in *Ex parte Ward*, 964 S.W.2d 617 (Tex. Crim. App.), *cert. denied*, 119 S. Ct. 66 (1998), that for the purposes of the Double Jeopardy Clause of the Fifth Amendment, jeopardy attaches only upon "full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due." *Id.* at 632.

Pursuant to *Stennett* and its progeny, once jeopardy has attached in a criminal proceeding, the Comptroller may not thereafter attempt to collect chapter 159 taxes. Since, under *Ward*, jeopardy will not attach on partial payment of the tax, there is no point short of full payment at which collection of taxes due and owing under chapter 159 constitutes punishment for double jeopardy purposes so as to preclude subsequent criminal prosecution.

Criminal prosecution by one sovereign, the United States, and tax collection by another, the State of Texas, does not implicate the Double Jeopardy Clause. The Comptroller may not refuse tender of payment of taxes due and owing under chapter 159. So long as there has not been full payment of the tax, which event triggers the attachment of jeopardy, the Double Jeopardy Clause is not implicated whether or not the Comptroller withdraws the civil referral and refunds the taxes collected. Generally, partial payments need not be refunded unless criminal prosecution has occurred before such payments were made. If the statute of limitations runs before the taxpayer files a claim for any impermissible payments, the taxpayer's claim is barred. However, if jeopardy has attached by reason of full payment, and the statute thereafter runs, the fact that the taxpayer may not get back his money has no effect on the state's subsequent inability to prosecute the underlying criminal case.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee