Matthew Todd LEDFORD, Petitioner,

v.

Tommy THOMAS, et al., Respondents.

No. CIV. A. H–00–0438.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 29, 2000.

Order Denying Reconsideration,
Jan. 24, 2001.

Stanley G Schneider, Schneider and McKinney, Houston, TX, for Matthew Todd Ledford, petitioners.

Edwin Sullivan, Office of the Attorney General, James M Terry, Jr, Office of Atty General, Austin, TX, for Tommy Thomas, Sheriff, Harris Cty, Gary L Johnson, Director, TDCJ–ID, respondents.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

On February 10, 2000, Matthew Todd Ledford moved under 28 U.S.C. § 2254 for a writ of habeas corpus, contending that his prosecution, conviction, and sentence in the Texas state court for possession of cocaine with the intent to deliver violates the Double Jeopardy Clause of the Fifth Amendment. Ledford bases his double jeopardy claim on the fact that before he was indicted, the State of Texas assessed, and Ledford partially paid, a tax for the illegal possession of the cocaine imposed under the Texas Controlled Substances Tax Act. (Docket Entry No. 1).

Following a hearing, this court denied Ledford's motion for stay pending this ruling on the merits of his habeas petition. (Docket Entry No. 15). Respondent has moved to dismiss based on a failure to exhaust and moved for summary judgment on the merits. Based on the pleadings, the motion and response, the record, and the applicable law, this court now DENIES respondent's motion to dismiss; GRANTS respondent's motion for summary judgment; and DENIES Ledford's section 2254 motion. The reasons are set out below.

### I. Background

On June 23, 1993, Ledford was arrested for the felony offense of possession of at least 2,000 grams of cocaine. On June 24, 1993, the Houston Police Department filed a marihuana and controlled substance report with the Texas Comptroller of Public Accounts. The report requested a tax assessment against Ledford in the amount of $400,000. On June 29, 1993, the Texas Comptroller of Public Accounts assessed $420,000 in taxes and penalties against Ledford under the Texas Controlled Sub-

stances Tax Act, Tex. Tax Code §§ 159.001—159.206, which imposes a tax on the illegal possession, purchase, acquisition, importation, manufacture, or production of a controlled substance. On July 8, 1993, the Comptroller filed a Texas State Tax Lien in Harris County. Ledford paid $100 of the $420,000 assessment to the Comptroller before July 15, 1993.

On July 15, 1993, the State of Texas indicted Ledford for possession of cocaine with the intent to deliver. Ledford moved to quash the indictment, arguing that under the Double Jeopardy Clause of the Fifth Amendment, as interpreted by the United States Supreme Court in *Montana Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the State of Texas could not prosecute him criminally after assessing the controlled substances tax. The state trial court denied Ledford's motion to quash and, after a bench trial, convicted Ledford of the charged offense. The trial court sentenced Ledford to fifteen years imprisonment and imposed a $10,000 fine.

On March 13, 1997, the Houston Court of Appeals, Fourteenth District, relying on *Stennett v. State*, 941 S.W.2d 914 (Tex. Crim.App.1996), reversed Ledford's conviction and dismissed the indictment. *Ledford v. State*, 1997 WL 109948 (Tex. App.—Houston [14th Dist.] March 13, 1997), *vacated, Ledford v. State*, 970 S.W.2d 17 (Tex.Crim.App.1998) (reh'g denied), *cert. denied, Ledford v. Texas*, 525 U.S. 1043, 119 S.Ct. 595, 142 L.Ed.2d 537 (1998). In *Stennett*, the Texas Court of Criminal Appeals had relied on *Kurth Ranch* to hold that the Texas Controlled Substances Tax Act was "punishment" for the purpose of the Double Jeopardy Clause, precluding the State of Texas from criminally prosecuting a defendant who had earlier paid even a small portion of such a tax assessment. *Stennett*, 941 S.W.2d at 916–17.

After the Texas court decided *Stennett v. State*, which provided the basis for the dismissal of Ledford's indictment, the Supreme Court decided *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), which disavowed the jeopardy analysis used in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and in *Kurth Ranch*. In *Hudson*, the Court returned to the analytical framework set out in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Under the *Ward* and *Kennedy* analysis, a court examines whether the legislature that enacted a sanctioning statute intended it to be civil or criminal; if the intended result is civil, the court examines whether there is "clear proof" that the sanction is nonetheless so punitive as to be criminal. *Hudson*, 118 S.Ct. at 493.

In January 1998, after the decision in *Hudson*, the Texas Court of Criminal Appeals decided *Ex parte Ward*, 964 S.W.2d 617 (Tex.Crim.App.1998) (en banc) (*Ward III*), reversing *Stennett v. State* in part. In *Ward III*, the court held that although a tax imposed under the Texas Controlled Substances Tax Act is punitive, an individual is not "punished" within the meaning of the Double Jeopardy Clause "absent full payment of the tax or a pay arrangement with the Comptroller for the remaining amount due." *Ward III*, 964 S.W.2d at 632. This holding rejected the holding in *Stennett* that an assessment or partial payment of a controlled substances tax precluded subsequent criminal prosecution. The *Ward III* court held that under the Texas Controlled Substances Tax Act, punishment does not occur for the purpose of jeopardy until a final judgment of tax

liability or a divestiture of ownership rights in the taxpayer's property, which requires either full payment of the tax or a pay arrangement with the Comptroller's office for the amount due.

Based on the intervening *Ward III* decision, the Texas Court of Appeals affirmed Ledford's conviction on reconsideration. *Ledford v. State,* 1999 WL 717387 (Tex. App.—Houston [14th Dist.] Sept.16, 1999). On February 10, 2000, Ledford filed this federal petition for a writ of habeas corpus, asserting that the criminal sentence he is serving under Texas law violates the Double Jeopardy Clause prohibition against successive punishments. (Docket Entry No. 1). Ledford moved for a stay of execution of his state court sentence pending the determination of his federal habeas petition. (Docket Entry No. 3). This court denied Ledford's motion, finding that Ledford had failed to show sufficient likelihood of succeeding on the merits. (Docket Entry No. 15). On August 1, 2000, respondent filed a motion to dismiss for failure to exhaust state court remedies and an alternative motion for summary judgment with a brief in support. (Docket Entry No. 22). Ledford has filed a brief in support of his petition for habeas corpus relief. (Docket Entry No. 18).

## II. The Applicable Legal Standards

### A. The Antiterrorism and Effective Death Penalty Act

Ledford filed this habeas petition on February 10, 2000; the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Nobles v. Johnson,* 127 F.3d 409, 415 (5th Cir.1997), *cert. denied,* 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). The AEDPA provides that a federal habeas petition shall not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The AEDPA further provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

In *Terry Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court reviewed the AEDPA's "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." 120 S.Ct. at 1523.[1] Under the AEDPA, federal court review of state court decisions differs de-

---

1. On April 18, 2000, the Supreme Court issued two separate opinions involving the AEDPA, in which the petitioners had the same surname. *Terry Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), involves 28 U.S.C. § 2254(d)(1); and *Michael Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), involves 28 U.S.C. § 2254(e)(2). To avoid confusion, this court will include the full name of the petitioner when citing these two cases.

pending on whether the issue is one of law, fact, or a mixed question of law and fact. *See id.* at 1519; 28 U.S.C. § 2254(d). In considering questions of law or mixed questions of law and fact, a court focuses on whether the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] A state court decision is contrary to Supreme Court precedent if: "(1) the state court's conclusion is 'opposite to that reached by [the Supreme Court] on a question of law' or (2) the 'state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and arrives at an opposite result." *Penry v. Johnson,* 215 F.3d 504, 507 (5th Cir.2000) ("*Penry II*") (quoting *Terry Williams,* 120 S.Ct. at 1519). "[A] run-of-the-mill state-court decision applying the correct legal rule ... to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"; to warrant relief under § 2254(d)(1), the decision must have been "diametrically different from, opposite in character or nature from, or mutually opposed to" clearly established precedent. *Terry Williams,* 120 S.Ct. at 1520 (quotations omitted).

Relief may also be granted if the state court decision rests on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state court unreasonably applies federal law if the court "identifies the correct legal rule from [the Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case" or "if the state court either unreasonably ex-

tends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Terry Williams,* 120 S.Ct. at 1520. An unreasonable application of federal law "is different from an incorrect application of federal law." *Id.* at 1522. To provide relief, a federal habeas court must not conclude that "the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

**B. Procedural Default and Procedural Bar**

■ Section 2254 provides that habeas relief shall not be granted if the petitioner has failed to exhaust available state remedies. *See* 28 U.S.C. § 2254(b)(1). Exhaustion requires that a petitioner's claims be fairly presented to the state courts before the claims can be considered for federal habeas relief. *See Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir.1999) ("Applicants seeking habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief.").

"A procedural default ... occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles,* 127 F.3d at 420 (quoting *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991)). The Texas Code of Criminal Procedure, Article 11.071 § 5(a), prohibits a Texas court from considering a successive habeas petition on the merits unless the petition satisfies one of the ex-

---

**2.** "[C]learly established federal law ... refers to holdings, as opposed to dicta, of [Supreme Court] decisions as of the time of the relevant

state-court decision." *Terry Williams,* 120 S.Ct. at 1523.

ceptions in section 5(a)(1),(2), or (3).[3] The Fifth Circuit has held that Article 11.071 is an adequate state procedural bar because Texas courts strictly and regularly enforce the rule. *See Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir.), *cert. denied*, 523 U.S. 1113, 118 S.Ct. 1793, 140 L.Ed.2d 933 (1998).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 111 S.Ct. at 2565. "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997) (citing *Coleman*, 111 S.Ct. at 2564–66), *cert. denied*, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

### III. The Issue of Exhaustion

Respondent's motion to dismiss is based on the assertion that Ledford failed to exhaust state court remedies. Respondent argues that Ledford's failure to file a state habeas petition, and his presentation of two claims to this court for the first time without earlier raising them in the state courts, requires dismissal. Ledford has not responded to this motion to dismiss.

The threshold issue is whether the State has waived the right to insist on exhaustion. In the brief opposing Ledford's motion to stay, respondent stated: "[p]ending a review of the record, [respondent] reserves his right to argue whether or not Ledford has exhausted his state remedies." (Docket Entry Nos. 9, p. 3; 10, p. 2). In the supplemental brief opposing petitioner's motion to stay, respondent explicitly stated that: "Ledford has exhausted his state court remedies." (Docket Entry No. 11, p. 2). Section 2254(b)(3) of the AEDPA provides that "a State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."

■ In *Bledsue v. Johnson*, 188 F.3d 250 (5th Cir.1999), the Fifth Circuit addressed facts similar to those presented here. In that case, "[i]n its original answer to the federal habeas petition, the

---

**3.** Article 11.071 § 5(a) provides:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

state admitted 'that Bledsue has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b) and (c).'" *Id.* at 254. The Fifth Circuit held that "[c]onsequently, the state has waived any independent exhaustion argument as well as the exhaustion argument included within the doctrine of procedural default." *Id.; Felder v. Estelle,* 693 F.2d 549, 554 (5th Cir.1982) (holding that state can waive exhaustion requirement in a habeas proceeding). The declaration in a brief that "Ledford has exhausted his state court remedies" expressly estops respondent from relying on the exhaustion requirement.

■ Even if respondent had not expressly waived the exhaustion requirement, this court finds respondent's arguments for dismissal unpersuasive. The Fifth Circuit has rejected the argument that a state application for habeas relief is a prerequisite to filing a motion under section 2254. In *Myers v. Collins,* 919 F.2d 1074 (5th Cir.1990), the Fifth Circuit reaffirmed that a state inmate filing a federal habeas petition has exhausted his state remedies if he has sought either direct or collateral review in the state court system. In *Myers,* the petitioner appealed his conviction to the Texas Court of Appeals, alleging ineffective assistance of counsel. After the court of appeals rejected Myers's claim on the merits, Myers filed a petition for review in Texas's highest criminal court, the Texas Court of Criminal Appeals. That court refused Myers's petition, without written opinion. *Id.* at 1075. Myers then filed a petition for federal habeas relief in the Southern District of Texas, asserting the same grounds for relief he had raised in his briefs to the Texas appellate court. The district court dismissed Myers's petition for failure to exhaust state remedies, finding that because the Texas Court of Criminal Appeals

had declined to exercise its discretionary review, Myers had not fairly presented his claims to the state court for the purpose of exhaustion. *Id.*

The Fifth Circuit reversed, rejecting the State's argument that Myers's pursuit of relief on direct appeal, even if procedurally proper, was insufficient to exhaust state remedies. "According to the State, [petitioner] must also seek state habeas relief prior to raising his claims in federal court. We disagree." *Id.* at 1076. The *Myers* court explicitly stated that "[a]t no time have we suggested that both avenues of relief [direct and collateral] must be pursued in order to satisfy the exhaustion requirement." *Id.; see also Bledsue,* 188 F.3d at 254 n. 8 (post-AEDPA) ("[A]t no time have we suggested that pursuing relief in the Court of Criminal Appeals in both a petition for discretionary review and in an application for a writ of habeas corpus is necessary to satisfy the exhaustion requirement.") (citing *Myers,* 919 F.2d at 1076).

Respondent's second basis for a failure to exhaust, that Ledford's habeas petition includes claims he has not previously presented to the state court, is also unpersuasive. Respondent bases this argument on differences between the claims Ledford asserted on direct appeal and the claims he asserted in this proceeding. Respondent asserts that on "direct appeal Ledford alleged that mere assessment of the drug tax was sufficient to bar his subsequent prosecution for possession of a controlled substance." (Docket Entry No. 22, p. 5). In its petition to the Texas Court of Criminal Appeals seeking discretionary review, the State argued that "mere assessment and partial payment of the drug tax was not sufficient to bar a subsequent criminal prosecution." *Id.* After the Texas Court of Criminal Appeals remanded the case to the court of appeals for reconsideration in

light of *Ex parte Ward* (*Ward III*), "for the first time[,] in his motion for rehearing, Ledford alleged that the tax determination *notice* was punishment for purposes of the Double Jeopardy Clause when that determination and assessment becomes final due to [a] failure to appeal the determination," (emphasis added) and that "full payment of the tax is not required to bar a subsequent criminal prosecution." *Id.* According to the State, Ledford failed to place these issues properly before the Texas Court of Criminal Appeal because that court only reviews "decisions" and does not reach the merits of an argument not presented to the court of appeals. Respondent argues that Ledford has "prevented the state court's ruling on, and, if necessary, correcting any constitutional errors that might have occurred in this case" if an unopposed tax determination notice or partial payment of the tax does trigger jeopardy. *Id.*

In *Hairston v. Alabama*, 465 F.2d 675 (5th Cir.1972), the Fifth Circuit addressed a similar situation and found that the petitioner had satisfied the exhaustion requirement. In *Hairston*, the petitioner filed for a Writ of Error Coram Nobis in the state trial court, claiming a denial of effective assistance of counsel. The petitioner subsequently filed a petition for federal habeas corpus relief, based on the absence of counsel when petitioner pleaded guilty. *Id.* at 678. The government opposed the petitioner's habeas petition on the ground that the petitioner had not sought coram nobis relief in the Alabama Circuit Court on the precise claim urged in the federal court—the absence of counsel at the guilty plea. In rejecting the government's argument, the *Hairston* court found that a rejection of the petitioner's ineffective assistance of counsel claim "necessarily presupposes a rejection of a denial of counsel claim." *Id.* The court explained: "If Alabama [was] convinced that counsel was

effective, it must [have] be[en] satisfied that counsel was provided for the indigent defendant." *Id.* The Fifth Circuit found that the "exhaustion principle and the comity concept require[d] no more...." *Id.* at 679.

Ledford's current habeas petition and his state court pleadings are in an analogous relationship to those in *Hairston*. Following the remand of Ledford's case from the Texas Court of Criminal Appeals, the Texas Court of Appeals, applying *Ward III*, affirmed Ledford's conviction. In *Ward III*, the Texas Court of Criminal Appeals had already explicitly rejected the double jeopardy arguments that Ledford later asserted: that the Texas controlled substances tax assessment, the Comptroller's issuance of a tax determination notice, and/or the taxpayer's partial payment, constitute "punishment" within the meaning of the Double Jeopardy Clause. In remanding for reconsideration in light of *Ward III*, the Texas Court of Appeals necessarily rejected Ledford's claims. In addition, in its petition in the Texas Court of Criminal Appeals for discretionary review, the State itself raised the issue of whether partial payment of a tax on a controlled substance triggers double jeopardy. (Docket Entry No. 22).

■ This court finds that Ledford presented the highest state criminal court with the claims he now raises in his federal petition. "Exhaustion normally 'requires only that the federal claim have been fairly presented to the highest court of the State, either on direct review of the conviction or in a post-conviction attack.'" *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982) (quoting *Escobedo v. Estelle*, 650 F.2d 70, 72 (5th Cir.), *modified on pet. for reh'g*, 655 F.2d 613 (1981)). Ledford has satisfied the exhaustion requirement.

## IV. The Issue of Double Jeopardy

### A. The Changing Case Law

Under 28 U.S.C. § 2254, Ledford must show that the Texas Court of Criminal Appeals decision in *Ward III*, as to when an individual is criminally "punished" under the Texas Controlled Substances Tax Act so as to trigger double jeopardy and preclude subsequent prosecution, was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." [4]

In *Ward III*, the Texas court identified seven possible points under the statute at which "punishment" might occur: (1) automatic statutory imposition of the tax; (2) receipt of a tax determination notice; (3) when a tax lien is imposed or State action is taken to enforce the lien; (4) when third parties are notified of a tax determination or when State action is taken to levy against frozen assets or debt held by third parties; (5) forfeiture of assets; (6) the State obtaining a final judgment of tax liability; or (7) payment of the tax. *Id.* at 623–24. In this case, the record shows that: (1) there was an automatic statutory imposition of the tax; (2) Ledford received notice of a $420,000 assessment and penalty; (3) the Comptroller filed a tax lien against Ledford in Harris County, which (4) Ledford's credit report reflects, thereby notifying third parties; and (5) Ledford made a payment of $100. As in *Ward III*, Ledford's criminal prosecution would be barred if any of the following five statutory points constitute "punishment" for the purpose of double jeopardy: (1) imposition; (2) notice; (3) tax lien; (4) credit report; or (5) partial payment.

The parties disagree as to the appropriate characterization of the Texas controlled substances tax. In *Ledford v. State*, 1999 WL 717387 (Tex.App.—Hous. 1999), the court relied on the *Ward III* court's analysis of the controlled substances tax statute:

> In [*Ward III*], the court held that the Texas Controlled Substances Tax becomes due immediately upon a person's "possession" of a taxable substance. Therefore, liability on the tax is not dependent on a person's receipt of a tax determination notice from the comptroller's office. Rather, once a person is found in possession of a taxable substance containing no payment certificates, the comptroller is responsible for collecting any unpaid taxes. This court concluded that under the Supreme Court's holding in *Kurth Ranch*, the automatic statutory imposition of the tax cannot constitute "punishment." The court reasoned that imposition of the tax, notice of the tax determination, imposition of the tax lien, and payment of a portion of the tax does not constitute "punishment" so as to bar subsequent criminal proceedings. The only way that a defendant can be "punished" so as to bar a subsequent criminal prosecution is by a final judgment of tax liability or by divestiture of ownership of property rights. "Absent full payment of the tax or a pay arrangement with the comptroller's office for the remaining amount due, there is no 'punishment' for purposes of the Double Jeopardy Clause's prohibition against multiple punishments."

---

4. A habeas petitioner attacking a state court judgment may also succeed by showing that the state adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In his petition, Ledford does not challenge any factual determinations made in his case by the Texas courts.

*Ledford,* 1999 WL 717387 at \*2 (citing and quoting *Ward III,* 964 S.W.2d at 628–34).

By contrast, Ledford relies on the Texas Tax Code's detailed scheme for the following description of the assessment and collection of the tax:

> The Tax Code allows the Comptroller to make a deficiency determination and requires the Comptroller to notify the taxpayer of his determination. The taxpayer then has 30 days to seek an administrative redetermination by the Comptroller. If no request for a redetermination is made within 30 days, the Comptroller's determination is final. If the Comptroller makes a jeopardy determination [that collection is in jeopardy] pursuant to [Section 111.022], the assessment becomes final 20 days after service.
>
> In order to challenge the tax assessment in the courts, the taxpayer must make a protest payment within six months after a jeopardy or deficiency determination becomes final, [Section 112.051(c) ], [Section 111.104(c)(3) ], and the taxpayer must file suit within 90 days after making the protest payment.
>
> Once the Comptroller's determination becomes final, the State may file suit to recover taxes, [Section 111.010], seize non-exempt property belonging to the taxpayer and sell it at auction, [Section 11.017], and levy on non-exempt property belonging to the taxpayer such as bank accounts, [Section 111.021].
>
> The taxpayer also may seek a declaratory judgment that he does not owe the tax without prepayment of the tax, but filing of that suit does not stop the state's collection efforts, including seizure of property and the imposition of a valid tax lien.

> .    .    .    .    .

> After the Comptroller's determination becomes final, absent a protest payment, the Comptroller can take steps to collect the tax he has determined is due and payable. Any further proceedings to avoid the Comptroller's tax assessment is essentially an appeal from the Comptroller's determination. Even a suit for declaratory judgment is nothing but an attack on the Comptroller's determination. Absent the timely filing of a collateral attack on the Comptroller's determination, the tax determination is final and not subject to later challenge by either the State or the taxpayer.

(Docket Entry No. 1, pp. 13–15 (citing Texas Controlled Substances Tax Act)).

According to Ledford, the *Ward III* court erred by focusing on the "Comptroller's Taxpayer's Rights Summary rather than the statutory scheme adopted by the Texas Legislature and by holding that the Comptroller's tax determination is not a final determination of the tax liability." *Id.* at pp. 15–16. Ledford emphasizes the facts that the Comptroller's deficiency determination is "final" absent an administrative redetermination sought by the taxpayer; that the Comptroller can take steps such as filing a lien to enforce the tax; and that even a judicial challenge to the Comptroller's determination is a "collateral attack" on a final deficiency determination. For Ledford, the statutory "finality" of the Comptroller's determination makes the determination itself "punishment" for the purpose of double jeopardy. The State emphasizes that statutory "finality" does not constitute the imposition of punishment that triggers jeopardy, under the Supreme Court authorities of *Kurth Ranch* and *Hudson.*

Under the AEDPA, the critical inquiry is whether the conclusion of the Texas Court of Criminal Appeals, that the statutory assessment, notice, and partial payment of the Texas controlled substances

tax is not a "punishment," is "clearly contrary to" established federal law. Ledford concedes that there is no Supreme Court precedent directly on point on the issue his habeas petition presents. There are several factual distinctions, with legal consequences, separating the facts involved in *Kurth Ranch* from Ledford's situation. In *Kurth Ranch,* the criminal narcotics prosecution occurred before the State attempted to collect a controlled substances tax. After the criminal prosecutions of the defendants in *Kurth Ranch,* the Montana Department of Revenue filed a proof of claim in the defendants' ongoing bankruptcy proceeding to collect the assessed tax. Prior to filing for bankruptcy, the defendants had contested the assessment in administrative proceedings, which were automatically stayed as a result of the bankruptcy proceeding. Given the sequence of events in *Kurth Ranch,* the Supreme Court did not need to decide at which point the application of the state tax statute became punitive. The only issue was whether the statute was punitive at any point; if so, then the previous criminal prosecution barred the subsequent tax "assessment" proceeding before the Supreme Court.

The *Kurth Ranch* majority explicitly declined to answer "whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Id.* at 783 n. 21, 114 S.Ct. 1937. This court, like *Ward III,* confronts this reverse situation, of tax assessment and partial payment before indictment, that the *Kurth Ranch* court did not address. Finally, as the *Ward III* court noted, "the facts and holding of *Kurth Ranch* inescapably lead ... to the conclusion that the Supreme Court did not hold the initial assessment of the taxes constituted the impermissible jeopardy since the tax assessments were issued prior to the crimi-

nal proceeding." *Ward III,* 964 S.W.2d at 629 n. 14.

In *Kurth Ranch,* the Court found that jeopardy barred the collection of the tax after a criminal prosecution. The *Kurth Ranch* decision did not decide the issue before this court: whether the application of a state controlled substances tax statute bars a subsequent criminal prosecution for the same conduct. Because there is no Supreme Court precedent directly on point, Ledford must show that the state court's adjudication of his claim involved an unreasonable application of Supreme Court precedent to the facts of this case. The issue is whether the decision in *Ward III,* as applied to Ledford, was an unreasonable application of federal law.

## B. The Texas Decision and Supreme Court Precedent

In *Ward III,* as in this case, the Comptroller of Public Accounts sent the notice of taxes due before the criminal indictment issued. Ward, like Ledford, made a partial payment of the taxes assessed. Ward paid $250 out of over $120,000 assessed; Ledford paid $100 out of the $420,000 assessed. Ward and Ledford were subsequently indicted for, and convicted of, drug possession offenses. Both appealed and filed habeas petitions based on double jeopardy.

In *Ward v. State (Ward I),* 870 S.W.2d 659, 662 (Tex.App.—Hous.1994, *writ. ref'd* ), *vacated, Ward v. Texas,* 513 U.S. 1011, 115 S.Ct. 567, 130 L.Ed.2d 485 (1994), the Texas Court of Appeals held that the "assessment" of the tax was not "punishment" for the purpose of jeopardy. The court based its holding on two grounds: 1) the State had not sought a judgment against Ward and there had been no court adjudication of his tax liability; and 2) Ward had not paid the tax in full or in substantial part. The Texas

Court of Appeals distinguished *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), on the ground that *Halper* contemplated a criminal prosecution and a civil action resulting in a judgment. The Texas Court of Criminal Appeals refused Ward's petition for discretionary review. Ward applied for a writ of *certiorari;* the United States Supreme Court vacated the judgment in *Ward I* and remanded the case for further consideration in light of its decision in *Kurth Ranch*. *Ward v. Texas*, 513 U.S. 1011, 115 S.Ct. 567, 130 L.Ed.2d 485 (1994).

On remand, in *Ward v. State (Ward II)*, 915 S.W.2d 941, 947 (Tex.App.—Hous. 1996), *rev'd, Ex parte Ward (Ward III)*, 964 S.W.2d 617 (Tex.Crim.App.1998), the Texas Court of Appeals reversed its original decision, concluding that the Texas controlled substances tax, like the Montana tax at issue in *Kurth Ranch,* was punitive in nature. *Id.* at 947 (citing *Kurth Ranch,* 114 S.Ct. at 1948). In a footnote, the *Ward II* court found that the order in which the assessment and criminal prosecution occurred was irrelevant for the purpose of double jeopardy. *Id.* at 947 n. 8. Specifically, the Texas Court of Appeals rejected the argument that *Kurth Ranch* could be distinguished because in that case, the defendants were arrested and indicted before the Montana Department of Revenue filed a proof of claim to collect the tax assessed for the same criminal behavior. The State sought review of the *Ward II* decision.

Before the Texas Court of Appeals decided *Ward III,* the Texas Court of Appeals decided *Stennett v. State,* 941 S.W.2d 914 (Tex.Crim.App.1996), and the United States Supreme Court decided *Hudson v. United States,* 118 S.Ct. at 488 (1997). In *Stennett,* the Texas Court of Criminal Appeals found that the Texas controlled sub-

stances tax was "punishment" for the purpose of double jeopardy. The court did not rely on the *Halper* analysis, instead comparing the Texas tax to the Montana tax at issue in *Kurth Ranch.* In Texas, unlike Montana, the tax can be imposed in the absence of arrest and individuals can pay the tax in confidence, without subjecting themselves to arrest or criminal prosecution. *Id.* at 916. However, based on the legislative history of the Texas controlled substances tax statute, the *Stennett* court concluded that the Texas tax was a criminal punishment. *Id.* at 917.

In *Hudson,* the Supreme Court disavowed its *Halper* analysis, affirming the pre-*Halper* reasoning in *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), for determining whether a civil penalty constitutes "punishment" for the purpose of double jeopardy. *Hudson,* 118 S.Ct. at 493–94. The Court found that its *Halper* analysis deviated from the traditional double jeopardy doctrine by focusing on whether a sanction was grossly disproportionate to the harm caused, as opposed to whether the sanction was a "criminal punishment." The *Halper* analysis also strayed by assessing the character of the penalty imposed rather than evaluating the penalty statute on its face. *Id.* at 494, 109 S.Ct. 1892. The Supreme Court had decided *Kurth Ranch* between *Halper* and *Hudson.*

In *Ward III,* the Texas Court of Criminal Appeals relied on *Hudson* in distinguishing *Stennett.* The *Ward III* court found that *Stennett* did not decide *when* a person is punished by the application of the Texas tax on illegally possessed controlled substances. *Ward III,* 964 S.W.2d at 622. The *Ward III* court found that the issue of when jeopardy attaches under the taxing statute did not arise, and was not

decided, in *Stennett, Halper,* or *Kurth Ranch.* Identifying it as a novel issue determinative of Ward's claim, the *Ward III* court turned to the precise question of when, in the Texas Controlled Substances Tax Act scheme, an individual is "punished" for the purpose of jeopardy. The court analyzed Ward's claim with respect to each of the four (out of seven possible) points in the statutory scheme at which Ward could have been punished.

The court first rejected Ward's argument that the tax assessment itself was punishment as the "equivalent of a final judgment because it is used by the comptroller to initiate proceedings to collect the unpaid taxes." *Id.* at 629. The Texas court found that "the comptroller's issuance of a tax determination has the same effect for jeopardy purposes as the government's filing of a claim in a civil forfeiture or the return of an indictment in a criminal prosecution," neither of which constitute "punishment" for the purpose of the Double Jeopardy Clause. *Id.* at 630. Based on the civil forfeiture cases such as *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the *Ward III* court found that even if an individual has suffered "some harm" as a result of the statutory tax assessment, that is not dispositive of the jeopardy question. *Ward III,* 964 S.W.2d at 626.

The *Ward III* court also relied on the Fifth Circuit's analysis of civil penalties in *United States v. Sanchez–Escareno,* 950 F.2d 193 (1991). In that case, the Fifth Circuit addressed the question of when jeopardy attaches in the context of civil penalties, specifically large fines. The Fifth Circuit found that although fines had been assessed against the defendants, and the defendants each executed documents, including promissory notes, acknowledging the fines, the defendants had not been "punished" at that point. The Fifth Cir-

cuit based this holding in large part on the ground that the government had not yet attempted to deprive defendants of their property. Their property and liberty remained "unmolested and free from the exercise of sovereign power." *Id.* at 202. The court found that: (1) the promissory notes were merely *prima facie* evidence of indebtedness; (2) the statutes provided procedures for side-stepping payments of the assessments, of which the government informed the defendants; and (3) by their terms, the promissory notes contemplated judicial processes for enforcement. *Id.* The *Ward III* court found that the Texas tax on controlled substances shared these important characteristics relevant to determining when the application of a statute imposing a penalty triggers jeopardy.

Courts in other jurisdictions have addressed whether and when the assessment of a controlled substances tax against an individual constitutes "punishment" that triggers the attachment of jeopardy. In *People v. Litchfield,* 902 P.2d 921 (Colo.Ct. App.1995), the Colorado court rejected the defendants' assertion that jeopardy barred their criminal prosecution after the assessment of taxes. Relying on the Fifth Circuit's *Sanchez–Escareno* decision, the court found that in the absence of an administrative hearing challenging the tax assessment or a final determination of tax liability, jeopardy had not attached.

Similarly, in *Minter v. Jarvis,* 1999 WL 1564978 (W.D.N.C. July 23, 1999), *vacated on other grounds, Minter v. Beck,* 230 F.3d 663 (4th Cir.2000), the court found that jeopardy barred the North Carolina Department of Revenue from collecting a controlled substances tax, although the initial assessment and notice of the tax did not bar a subsequent criminal prosecution. In *Minter,* the petitioner was arrested; charged with numerous drug trafficking violations; served with a Notice of a Con-

trolled Substances Tax Assessment; received a Certificate of Tax Liability; entered a plea of guilty to criminal charges; and received a prison sentence. *Id.* at *1. "Exactly one year later, the State collected $410 in partial payment of the tax assessment ...." *Id.* The district court found that, following *Kurth Ranch,* the State's collection of the tax, not the assessment of the tax, violated double jeopardy. *Id.* at *12. The district court did not vacate petitioner's sentence, but did enjoin collection of the North Carolina controlled substances tax. *Id.* at *13.

The Tenth Circuit affirmed a similar conclusion in *Morgan v. Lytle,* 188 F.3d 519, 1999 WL 542576 (10th Cir.1999) (unpub.op.). In *Morgan,* the petitioner was assessed a tax under the New Mexico controlled substances tax statute in March 1993. The petitioner contended that in April 1993, New Mexico had collected the assessed taxes. In July 1993, the petitioner was tried and convicted. The State did not dispute the petitioner's contention that the tax was not only assessed but collected before the petitioner was convicted. The magistrate judge noted that the petitioner asserted that his conviction constituted "double jeopardy because it followed the imposition and collection of a punitive tax assessment." *Id.* at *1. The district court adopted the magistrate judge's conclusion that the Fifth Amendment barred a criminal prosecution after the assessment and collection of the controlled substance tax. *Id.* The Tenth Circuit affirmed. *Id.* at *2.

The Indiana courts have reached a different result. In *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), the Indiana Supreme Court found that in the circumstances of the case before it, jeopardy precluded criminal prosecution after assessment of a controlled substances tax. In *Bryant,* a state revenue agent met with the defendant and demanded immediate payment of the controlled substances tax assessed. When the defendant did not immediately pay, the agent served him with a "Record of Jeopardy Findings and Jeopardy Assessment Notice and Demand," which required immediate payment of the tax and a penalty of 100 percent for non-payment. The Indiana Supreme Court found that jeopardy attached when the revenue agent served Bryant with the Record of Jeopardy Finding and Jeopardy Assessment Notice and Demand because the state department of revenue had effectively determined Bryant's guilt by assessing the 100 percent penalty. *Id.* In *Fassinger v. State,* 666 N.E.2d 58 (Ind.1996), the Indiana Supreme Court, citing *Bryant,* found that jeopardy attached when the department of revenue issued the controlled substances tax assessment. *Id.* at 58.

The *Ward III* court disagreed with the *Fassinger* court's application of *Bryant,* noting that the *Bryant* court specifically stated in a footnote that it was not addressing " 'whether the assessment of the tax itself was jeopardy independent of the 100 percent penalty and criminal charge.' " *Ward III,* 964 S.W.2d at 628 (quoting *Bryant,* 660 N.E.2d at 296 n. 13). In *Ward III,* the Texas court followed the majority approach and held that assessment of a controlled substances act tax, in itself, does not trigger the attachment of jeopardy. The majority result is consistent with the analysis of the federal courts reviewing analogous civil forfeiture assessments. The contrary Indiana holdings appear to rest on facts not present in this case.

Ledford asserts that the imposition of the assessment itself under the Texas statute is "punishment." Ledford argues that under the statute, a tax determination is subject to an administrative redetermination if a petitioner files a request within 30

days of the assessment notice (or within 20 days if the Comptroller makes the determination that there is a possibility of jeopardy attaching by the collection of the taxes). If no timely administrative request is filed, a taxpayer must make a protest payment within six months of the determination in order to challenge the determination in court. Ledford analogizes this situation to a final judgment by a trial court that, although subject to appeal, is nonetheless final. As the dissent argued in *Ward III*, "a comptroller's determination is the functional equivalent of a judgment in other civil matters, for double jeopardy purposes a dealer who has not paid the controlled substances tax is punished when the comptroller assesses the tax by issuing a determination." *Ward III*, 964 S.W.2d at 637 (Meyers, J., dissenting).

■ The *Ward III* court majority rejected the use of "finality" Ledford proposes as the trigger for jeopardy. The *Ward III* court held that "the mere assessment is not the functional equivalent of a final adjudication of guilt, but merely a formal determination of civil tax liability." *Babb v. Johnson*, 61 F.Supp.2d 604, 606 (S.D.Tex.1999) (citing *Ward III*, 964 S.W.2d at 630). In *Babb, Ward III,* and in this case, the State made no attempt to collect the tax. In neither *Babb, Ward III,* nor this case did the State invoke any judicial process to enforce or collect the tax. "The mere assessment of the tax was not a prosecution of Babb [or Ward or Ledford], it was simply a determination and declaration that the tax was due and payable. The actions taken by the Comptroller never put [the three] in jeopardy." *Id.* Babb, Ward and Ledford "suffered no Fifth Amendment punishment as a result of the Comptroller's assessment" and their double jeopardy claims fail. *Babb*, 61 F.Supp.2d at 606. "In the absence of prior

jeopardy, there can be no double jeopardy violation." *Id.* This court finds no basis for habeas relief in the challenge to the *Ward III* court's conclusion that the tax assessment on a controlled substance alone did not bar subsequent criminal prosecution for narcotics violations. *Cf. Baehler v. Polk County District Court*, 187 F.3d 640, 1999 WL 535320 (8th Cir.1999) (reaffirming that double jeopardy did not bar criminal prosecution after Iowa issued a drug tax assessment against petitioner).

The *Ward III* court also concluded that the imposition of a tax lien did not constitute "punishment" because it did not extinguish Ward's property rights or permanently divest his ownership interest in the property. A tax lien is conditional in nature and "can simply be withdrawn by the State or comptroller." *Ward III*, 964 S.W.2d at 631. "[A]bsent an attempt by the State to enforce the tax lien," the lien itself does not bar a subsequent criminal prosecution for possession. *Id.* Here, as in *Ward III*, although the Comptroller placed a lien on Ledford's property, until the State takes affirmative steps that divest Ledford of his rights in that property, Ledford is not placed in jeopardy as a result of the application of the Texas Controlled Substances Tax Act.

The *Ward III* court next addressed whether a partial payment (in Ward's case $250 out of over $120,000; in Ledford's case of $100 out of $420,000) constituted punishment for the purpose of double jeopardy. The *Ward III* court found that although the facts of *Stennett* had involved a partial payment, *Stennett* did not specifically resolve whether a small partial payment precluded a subsequent criminal prosecution. *Ward III*, 964 S.W.2d at 632 (citing *Broussard v. State*, 978 S.W.2d 591 (Tex.App.—Tyler 1997)). The *Ward III* court "overrule[d] *Stennett* to the extent that it may be interpreted as holding the

'assessment' of the tax on controlled substance and/or 'partial payment' of the tax due constitute 'punishment' for purposes of *Kurth Ranch*'s prohibition against 'successive punishments.' " *Id.*[5]

Ledford most strongly criticizes the *Ward III* court's rejection of Ward's argument that a partial payment would bar criminal prosecution. The *Ward III* court noted that if a defendant made a partial "protest" payment and was ultimately successful in resisting the tax assessment, the jeopardy bar would still be in place, no payment would be due, and the defendant would reap a "windfall." Ledford correctly identifies a problem with this analysis: if a defendant successfully protests a controlled substances tax, the jeopardy bar to criminal prosecution would disappear. However, the *Ward III* court did not rely on its rejection of Ward's argument in its holding that jeopardy had not attached. Rather, the court emphasized that Ward had "neither received a final judgment of tax liability nor was divested of ownership rights in his property." The *Ward III* court concluded that neither the Comptroller's assessment of a controlled substance tax nor the taxpayer's partial payment constitute "punishment" triggering jeopardy. Because the *Ward III* court found that jeopardy did not attach in the first place, the issue of whether jeopardy would have attached, then "detached" in the event of a successful challenge, does not arise.

In *Ex parte Diaz,* 959 S.W.2d 213 (Tex. Crim.App.1998) (en banc), the Texas Court of Criminal Appeals found that jeopardy did not attach as a result of an administrative redetermination proceeding ongoing at the time the State indicted and prosecuted the defendant for possession of cocaine. Diaz was arrested and given notice of the statutory assessment of a tax under the Texas Controlled Substances Act. The Comptroller sent a freeze notice to Diaz's bank. The bank complied with the notice. On August 3, 1993, Diaz filed a request for a redetermination hearing with the Comptroller's office. On May 4, 1994, the applicant pleaded guilty to the criminal offense of possession of cocaine. On February 22, 1995, the administrative law judge hearing the redetermination application concluded that Diaz was in fact in possession of the taxed cocaine. *Id.* at 214. Diaz filed an application for writ of habeas corpus, arguing that the ongoing administrative hearing barred the criminal prosecution. The Texas Court of Criminal Appeals rejected his argument, holding that a pending administrative redetermination from a tax assessment does not bar criminal prosecution. *Id.* at 215–16.[6]

---

5. Since *Ward III,* the Texas courts have affirmed and expanded the holding in *Ward III.* In *Ex parte Corral,* 1999 WL 993827 (Tex. App.—Dallas, Nov. 2, 1999, *pet.granted* ) (unpub.op.), in addition to those stages addressed in *Ward III,* the Comptroller instructed the defendants' bank to freeze the defendants' account. The Comptroller then sent the bank a notice of levy, directing the bank to send the Comptroller all the account assets in the bank's possession, not to exceed the amount of the tax. The bank eventually sent the Comptroller a check in the amount of all of the money the defendants had on deposit. *Id.* at *1. The court found that this partial payment of approximately ten percent of the total tax assessment did not implicate double jeop-

ardy. The court explained that it "read *Ward* [*III* ] to require either full payment of the tax, a pay arrangement with the Comptroller for the remaining amount due, or a final judgment of tax liability before a defendant has been punished for double jeopardy purposes." *Id.* at *3.

6. As the concurrence noted in *Diaz,* it is possible that "while the double jeopardy clause would prevent the Comptroller from actual collection of the drug tax he determined to be due, it does not affect applicant's conviction for possession of the cocaine that resulted in the finding of tax due."

■ The Texas Court of Criminal Appeals' holdings that jeopardy does not attach until there is a final judgment of tax liability, or the State receives full payment of the tax, or the State enters into an agreement with the defendant for full payment, so as to divest the defendant of ownership rights in assets used to satisfy the tax, is consistent with the Supreme Court's holdings in *Hudson, Ursery,* and *Kurth Ranch* as well as with the Fifth Circuit's decision in *Sanchez–Escareno.* In each of these cases, the court acknowledged that jeopardy does not necessarily attach at the outset of a civil forfeiture or tax proceeding. Instead, specific government action that divests the defendant of his property is necessary to trigger jeopardy. In *Hudson,* the Court disavowed the reasoning and analytical approach on which *Kurth Ranch* depends. *Kurth Ranch* itself explicitly left open the question of when in the process of tax assessment and collection a controlled substances tax statute inflicts "punishment." The *Ward III* court determined that neither tax assessment, lien imposition, nor small partial payment is sufficient for jeopardy to attach so as to preclude subsequent criminal prosecution. This conclusion is not an unreasonable application of existing federal law.

■■ The case law regarding successive prosecutions supports this conclusion. Under both Texas and federal law, jeopardy does not attach at the arrest or indictment stage. Instead, in a jury trial, jeopardy attaches when the jury is empaneled and sworn. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Proctor v. State,* 841 S.W.2d 1 (Tex.Crim. App.1992). In a bench trial, jeopardy does not attach under state law until both sides have announced ready and the defendant has pleaded to the charging instrument. *See State v. Torres,* 805 S.W.2d 418 (Tex.

Crim.App.1991). In neither circumstance does jeopardy attach until the trial begins and the judicial process is fully invoked. Neither arrest, pretrial detainment, nor a grand jury inquiry is "punishment" triggering double jeopardy.

■ Similarly, the *Ward III* holding that jeopardy does not attach under the Texas Controlled Substances Tax Act until the state divests an individual of ownership rights in assets or property to fulfill the tax liability is consistent with existing law and the statutory structure itself. A tax lien or a credit report may infringe or restrict ownership rights, but does not extinguish them. An individual at that point, such as Ledford or Ward, may still pay the tax due; request a redetermination; bring suit after making a protest payment; or sue to determine the validity of the tax lien. An individual at that point, such as Ledford or Ward, has no final judgment of tax liability and has not been divested of his assets. The occurrence of some of the steps that are necessary, but not sufficient, to enforce and collect an assessed tax, does not trigger jeopardy.

Ledford does not meet his burden under the AEDPA of showing that *Ward III* constituted an unreasonable extension or application of established Supreme Court precedent.

## VI. Certificate of Appealability

In section 102 of AEDPA, Congress amended 28 U.S.C. § 2253 to provide that a certificate of appealability, rather than a certificate of probable cause, is the appropriate mechanism for allowing a habeas petitioner to appeal a final judgment from a federal district court. *Id.* § 102. The amended statute provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

█ The standard for issuance of a certificate of appealability pursuant to the AEDPA is the same as was required formerly for a certificate of probable cause. *See Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir.1998) (citing *Drinkard v. Johnson*, 97 F.3d 751, 756 (5th Cir.1996)). Section 2253 provides that a certificate of appealability may only be granted upon a "substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253 (as amended April 24, 1996) (emphasis added); *see also United States v. Orozco*, 103 F.3d 389 (5th Cir.1996). "A petitioner can meet this burden by demonstrating that 'the issues [presented] are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.' " *Little v. Johnson*, 162 F.3d 855, 859 (5th Cir. 1998) (alteration in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3394–95 & n. 4, 77 L.Ed.2d 1090 (1983)).

In this case, petitioner has sufficiently met his burden of showing that the issue at stake in this case, namely the issue of when jeopardy attaches in a tax assessment scheme, is debatable among jurists of reason. This court GRANTS Ledford a COA.

## V. Conclusion

After reviewing Ledford's arguments and the applicable precedent, this court is persuaded that the question Ledford presented to the state courts—at what point in the process of collecting a punitive tax is punishment imposed for the purpose of the Double Jeopardy Clause—is a substantial question of constitutional law. However, this court finds that Ledford has failed to show that the state court adjudication of that question, based on *Ward III*, involved an objectively unreasonable application of federal law as defined in Supreme Court precedent. The *Ward III* court acknowledged the *Hudson* holding and correctly looked to the civil penalty and forfeiture cases for guidance. Neither the reasoning nor the result of *Ward III*, applied to the facts of this case, was an unreasonable application of established federal precedent.

This court DENIES Ledford's petition for habeas corpus and GRANTS Ledford a COA.

## MEMORANDUM AND ORDER

Petitioner, Matthew Todd Ledford, has filed a motion for reconsideration of this court's dismissal of his petition for habeas corpus, proceeding under Rule 60(b) of the Federal Rules of Civil Procedure. Ledford argues that this court's decision conflicts with the Fifth Circuit's recent decision in *Doyle v. Johnson*, 235 F.3d 956 (5th Cir.2000). (Docket Entry No. 26 & Ex. A).

In both the *Doyle* case and in this case, the petitioners argued that Texas violated the Double Jeopardy Clause by assessing taxes under the Texas Controlled Substances Tax and then criminally prosecuting them for possession of a controlled substance. In Ledford's case, he was arrested; Texas assessed a tax in the amount of $440,000 under the Texas Controlled Substances Tax and notified Ledford of the assessment; the Comptroller filed a tax lien against Ledford; Ledford made a partial payment of $100; Texas then indicted and prosecuted Ledford, who was convicted. In Doyle's case, he was arrested; Texas assessed taxes in the amount of $8,200 under the Texas Controlled Substances Tax and notified Doyle of the assessment; the Comptroller filed a tax lien against Doyle; the Comptroller froze Doyle's bank account, which contained $1,867.55; Doyle requested a redetermination hearing, which was stayed

pending the resolution of Doyle's criminal prosecution; and Doyle was found guilty. After Doyle's conviction, the Comptroller confiscated his bank account.

In *Doyle*, the Fifth Circuit held that although the Texas Controlled Substances Tax is punitive in nature, Doyle's criminal prosecution did not violate the Double Jeopardy Clause. The Fifth Circuit found that jeopardy does not attach with respect to a controlled substances tax assessment until the defendant voluntarily pays the amount of taxes due in full or until the government takes title to the defendant's assets to satisfy the tax liability. The court held that neither the assessment of the tax, the filing of the tax lien, nor the freezing of the defendant's bank account triggered jeopardy. Although the issue was not before the court, the Fifth Circuit held that the imposition of the tax after the criminal prosecution and conviction would violate the Double Jeopardy Clause as a successive punishment.

On November 29, 2000, this court found that the State's criminal prosecution of Ledford did not violate the Double Jeopardy Clause. (Docket Entry No. 24). This court held that jeopardy did not attach with respect to the tax because Ledford had not paid the tax in full or made any arrangement to do so and the State had not taken title to his property. This holding is consistent with *Doyle*.

In this motion, Ledford argues that under *Doyle*, the voluntary partial tax payment, of $100 out of the $440,000 tax assessment, before the criminal trial began, triggered jeopardy. *Doyle* did not so hold. In *Doyle*, the Fifth Circuit approved of the Texas Court of Criminal Appeals decision in *Ex parte Ward*, 964 S.W.2d 617 (Tex. Crim.App.), *cert. denied*, 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). The *Doyle* court held that "[w]e agree with the *Ward* court that a tax imposed under Sec-

tion 159.101 of the Texas Tax Code is punitive in nature and that jeopardy attaches when the defendant voluntarily pays the amount due *in full*." (emphasis added). The Fifth Circuit agreed with the *Ward* court, which specifically rejected the defendant's argument that the voluntary payment of a small portion of the assessed tax triggered jeopardy.

This court's November 29, 2000 decision dismissing Ledford's petition for habeas corpus is not in conflict with the Fifth Circuit's decision in *Doyle*. Ledford's motion for reconsideration is DENIED.